Court of Appeals
Fourth Court of Appeals District of Texas
San Antonio


# OPINION

No. 04-09-00750-CV

Anastacio G. **GARZA** and Barbara T. Garza,
Appellants

v.

Alejandro E. **VILLARREAL** Jr., Alfonso J. Garza, Pedro A. Gonzalez, Olga V. Guinee,
Cristobal Villarreal, and Huisache Cattle Company, Ltd.,
Appellees

From the 111th Judicial District Court, Webb County, Texas
Trial Court No. 2007-CVF-001899-D2
Honorable Raul Vasquez, Judge Presiding

Opinion by:     Karen Angelini, Justice

Sitting:          Karen Angelini, Justice
                 Phylis J. Speedlin, Justice
                 Rebecca Simmons, Justice

Delivered and Filed:  February 2, 2011

AFFIRMED IN PART, REVERSED AND RENDERED IN PART

The parties in this case are owners of tracts of land in the Zeferino Villarreal Pasture of

the El Huisache Ranch located in Webb County, Texas. Appellant Anastacio G. Garza[1] brought

claims against Alejandro E. Villarreal Jr., Alfonso J. Garza, Pedro A. Gonzalez, Olga V. Guinee,

and Cristobal Villarreal, (hereinafter referred to collectively as "the Villarreals"), and against

---

[1]Garza's wife, Barbara T. Garza, was also a plaintiff below and is an appellant in this case. Anastacio and Barbara will be referred to collectively as "Garza" in this opinion.

Huisache Cattle Company, Ltd. to enforce a right of first refusal or "preference right" as to the sale of land in the El Huisache Ranch. The Villarreals responded to the suit, asserting Garza had already assigned his preference right to Huisache. The parties went to mediation, agreed to settle their claims, and executed a settlement agreement that met the requisites of Rule 11 of the Texas Rules of Civil Procedure. Thereafter, a dispute arose concerning the meaning of paragraph 3 of the agreement, which, among other things, suspends the preference right requirement for some transactions. The Villarreals and Huisache filed a motion to enforce the settlement agreement. Garza filed a motion to enforce or to clarify the settlement agreement. The trial court held a hearing, granted the Villarreals's and Huisache's motion to enforce, and ordered Garza to pay attorney's fees incurred in prosecuting the motion to enforce the settlement agreement. The trial court later signed a final judgment implementing the settlement agreement and Garza appealed.

On appeal, Garza argues the trial court's judgment must be reversed because the parties did not intend Huisache to be included in paragraph 3 of the agreement. He also argues (1) the settlement agreement is unenforceable because it lacks consideration, (2) the settlement agreement is unenforceable because of mutual mistake, (3) the trial court should have granted his motion to clarify the settlement agreement, and (4) the trial court erred in awarding attorney's fees. We reverse the judgment as to attorney's fees, but affirm the judgment in all other respects.

**BACKGROUND**

A detailed explanation of the background facts is necessary to understand and analyze the issues presented in this case.

### 1. The Creation and Assignment of Preference Rights

In 1987, the owners of the Zeferino Villarreal Pasture of the El Huisache Ranch executed a partition deed, which partitioned the ranch's surface acreage into five shares. At the time, all of

the owners were members of the Villarreal family. The deed contained a right of first refusal clause entitled "Preference Right." This preference right clause granted each interest owner the right to purchase any other interest owner's share in the El Huisache Ranch upon the same terms as offered another potential buyer. The deed required interest owners contemplating a sale of any share of the El Huisache Ranch to notify the other interest owners of the terms of any potential sale, and give them the opportunity to purchase the share under the same terms.

In 1988, Huisache, which was not a party to the 1987 partition deed, purchased share five of the El Huisache Ranch.

In 1993, the appellant in this case, Garza, inherited part of share one of the El Huisache Ranch. A year later, in 1994, Garza and Huisache entered into a transaction, whereby Garza and Huisache sold and exchanged several tracts of land. As part of this transaction, Garza executed a document entitled, "Irrevocable Assignment of Preference Right." In the document, Garza purported to transfer all of his preference rights to Huisache. The assignment stated it was irrevocable.

In 2007, Garza inherited part of share three of the El Huisache Ranch. Alejandro E. Villarreal Jr., Alfonso J. Garza, Pedro A. Gonzalez, and Olga V. Guinee, who also inherited part of share three of the El Huisache Ranch, agreed to sell their interests in share three to Cristobal Villarreal. However, Garza desired to buy these interests. When Garza notified Alejandro E. Villarreal Jr., Alfonso J. Garza, Pedro A. Gonzalez, and Olga V. Guinee that he was exercising his preference right to their interests in share three, they refused to sell their interests to Garza.

In 2008, Garza signed a document purporting to revoke his "Irrevocable Assignment of Preference Right." Garza took the position that the preference right was not assignable under the

terms of the deed, and therefore, the "Irrevocable Assignment of Preference Right" previously executed by him was void.

### 2. The Underlying Lawsuit and the Mediated Settlement Agreement

On October 26, 2007, Garza filed the underlying suit seeking to enforce the preference right contained in the 1987 partition deed. The suit included claims for specific performance and breach of contract against Alejandro E. Villarreal Jr., Alfonso J. Garza, Pedro A. Gonzalez, and Olga V. Guinee. In response, Alejandro E. Villarreal Jr., Alfonso J. Garza, Pedro A. Gonzalez, and Olga V. Guinee, maintained that the preference right claimed by Garza was owned by Huisache by virtue of the "Irrevocable Assignment of Preference Right" signed in 1994.

Garza then amended his pleadings to (1) include Huisache as a party, (2) add a claim for declaratory judgment, and (3) add claims for conspiracy and fraud in the inducement and execution of the "Irrevocable Assignment of Preference Right" against Huisache. The declaratory judgment claim requested interpretation of the preference right clause in the 1987 partition deed as it related to the assignment of such rights. The Villarreals and Huisache countered by amending their pleadings to add a counterclaim for declaratory judgment as to the parties' rights, status, and legal relations with regard to the "Irrevocable Assignment of Preference Right."

Eventually, the parties went to mediation, agreed to settle their claims, and executed a Rule 11 settlement agreement.

### 3. The Enforcement Proceedings

When a dispute arose concerning the meaning of the second sentence in paragraph 3 of the agreement, the parties filed competing motions to enforce the settlement agreement. The disputed sentence states: "Further, the Parties agree tha[t] an exchange or swap of lands between

owners of the lands covered by the 1987 Partition Deed shall not trigger the applicability of the preference rights provision set forth in the 1987 Partition Deed with regard to said swapped or exchanged lands."

In their motion to enforce the settlement agreement, the Villarreals and Huisache alleged the parties' settlement agreement was a binding and enforceable contract. The Villarreals and Huisache alleged Garza breached the settlement agreement by failing to execute the "Waiver of Preference Right" document in accordance with the terms of the agreement. The Villarreals and Huisache asked the trial court to order Garza to (1) execute the "Waiver of Preference Right" document, (2) execute all documents necessary to effectuate the terms of the settlement agreement, and (3) pay attorney's fees related to the enforcement motion. The motion also asked the trial court for further relief to which the Villarreals and Huisache showed themselves entitled to receive.

Garza also filed a motion to enforce or clarify the settlement agreement. Garza asserted the parties to the mediated settlement agreement "did not intend for Paragraph 3 to be interpreted to mean that Huisache [] is a preference right holder and entitled to be a party to that specific agreement." Garza further asked the trial court to interpret the 1987 partition deed and to "clarify and/or interpret the meaning of Paragraph 3."

At the enforcement hearing, Huisache asked the court to enforce the terms of the settlement agreement and to order Garza to sign the "Waiver of Preference Right" document. Huisache called one of its lawyers, Raul Leal, who testified about why the parties included paragraph 3 in the settlement agreement. For his part, Garza called an expert witness who testified about the meaning of the 1987 partition deed, and provided his legal opinion that Huisache could not have acquired any preference rights through its purchase of tracts covered by

the 1987 partition deed. Garza also explained that he refused to sign the "Waiver of Preference Right" because it was unnecessary and because it attempted to confer a preference right on Huisache which it did not have under the 1987 partition deed. Both parties also called witnesses who testified about attorney's fees.

The trial court granted Huisache's motion for enforcement and denied Garza's motion to enforce or clarify. The trial court found that Garza breached the terms of the settlement agreement by his failure to recognize and acknowledge that (1) Huisache is one of the parties as that term is defined and used in the settlement agreement, (2) Huisache is one of the owners of the lands covered by the 1987 partition deed, and (3) an exchange or swap of lands between owners of the lands covered by the 1987 Partition Deed, including Huisache, shall not trigger the applicability of the preference right provision in the 1987 Partition Deed with regard to said swapped or exchanged lands. The trial court also awarded the Villarreals and Huisache $3,500.00 in attorney's fees for prosecuting their motion to enforce. The trial court, however, did not order Garza to execute the "Waiver of Preference Right" document.

## ENFORCEMENT OF THE SETTLEMENT AGREEMENT

In his first issue, Garza argues the trial court erred in granting the Villarreals's and Huisache's motion to enforce the settlement agreement because the parties did not intend to include Huisache in the second sentence of paragraph 3 of the agreement, and thereby suspend the preference right requirement as to Huisache. In evaluating this issue, Garza urges us to look not only to the plain language of the settlement agreement, but also to the circumstances surrounding the signing of the settlement agreement. Garza does not contend that the settlement agreement is ambiguous. Rather, Garza argues that his interpretation of the settlement agreement is the only objectively reasonable interpretation of the settlement agreement.

"If parties reach a settlement agreement and execute a written agreement disposing of the dispute, the agreement is enforceable in the same manner as any other written contract." TEX. CIV. PRAC. & REM. CODE ANN. § 154.071(a) (West 2005). "A settlement agreement is a contract, and its construction is governed by legal principles applicable to contracts generally." *Donzis v. McLaughlin*, 981 S.W.2d 58, 61 (Tex. App.—San Antonio 1998, no pet.).

A court's primary concern in interpreting a contract is to ascertain the true intent of the parties as expressed in the contract. *Seagull Energy E & P, Inc. v. Eland Energy, Inc.*, 207 S.W.3d 342, 345 (Tex. 2006). Courts interpret Rule 11 settlement agreements based on the intention of the parties from the language of the entire agreement in light of the surrounding circumstances, including the state of the pleadings, the allegations therein, and the attitude of the parties with respect to the issues. *Lesikar v. EOG Resources, Inc.*, 236 S.W.3d 457, 458-59 (Tex. App.—Amarillo 2007, no pet.); *In re Acevedo*, 956 S.W.2d 770, 775 (Tex. App.—San Antonio 1997, orig. proceeding). Although courts may consider the facts and circumstances surrounding the execution of the settlement agreement, such consideration "is simply an aid in the construction of the contract's language." *Sun Oil Co. v. Medeley*, 626 S.W.2d 726, 731 (Tex. 1981). "If, in the light of surrounding circumstances, the language of the contract appears to be capable of only one meaning, the court can then confine itself to the writing." *Id*.

In construing a contract, courts examine the instrument as a whole in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless. *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003). Courts give terms their plain, ordinary, and generally accepted meaning unless the contract shows the parties used them in a technical or different sense. *Am. Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154,

158-59 (Tex. 2003). In construing a settlement agreement, a court may not rewrite the contract or add to its language. *Id*. at 162.

Ambiguity is a question of law, which a court may determine regardless of whether the parties have raised the issue. *See Coker v. Coker*, 650 S.W.2d 391, 392-95 (Tex. 1983) (holding settlement agreement was ambiguous despite the parties' assertion to the contrary). Lack of clarity does not create an ambiguity; nor does an ambiguity arise merely because the parties to the agreement offer different interpretations of the agreement. *DeWitt County Elec. Coop., Inc. v. Parks*, 1 S.W.3d 96, 100 (Tex. 1999). An ambiguity arises when an agreement is susceptible to more than one reasonable meaning after the application of established rules of construction. *Univ. Health Servs., Inc. v. Renaissance Women's Group, P.A.*, 121 S.W.3d 742, 746 (Tex. 2003). If the contract language can be given a certain or definite meaning, then the contract is not ambiguous and the court should interpret it as a matter of law. *Id*.

Here, the key provisions of the settlement agreement, which was signed by the all of the parties and their attorneys, are:

> Huisache shall waive its right-of-first refusal for the purchase of Villarreal Lands set forth in items 2 and 4 below and shall endorse and ratify the Revocation of the Irrevocable Assignment of Preference Rights dated April 24, 2008, and recorded in Volume 2569, Page 359 of the Webb County Deed Records, executed by Garza.
>
> ….
>
> The Parties (other than Garza) shall waive their preference rights granted in the 1987 Partition Deed (as defined below) with respect to Tract 2 depicted in the attached plat. Further, the Parties agree than (sic) an exchange or swap of lands between owners of the lands covered by the 1987 Partition Deed shall not trigger the applicability of the preference rights provision set forth in the 1987 Partition Deed with regard to said swapped or exchanged land.
>
> ….
>
> Cristobal, Garza and Villarreal shall grant to Huisache the preferential right to purchase any and all lands within the Zeferino Villarreal Pasture in substantially the same form as the preference rights set forth in the 1987 Partition Deed. Such

preferential rights shall only be triggered by any proposed sales to any party that is not a Villarreal Heir. For purposes of this Rule 11 Agreement, a Villarreal Heir shall mean Anastacio Garza, Cristobal Villarreal, Anna Worland, Irma Torres, Alfonso Villarreal and their respective heirs.

….

Garza, Villarreal, Cristobal and Huisache shall release each other from any and all claims which have been made or which could have been made by the Parties in this Cause.

….

The Parties shall execute all necessary documents to effectuate the foregoing terms….

(emphasis added).

Consistent with contract construction principles, we examine the language of the settlement agreement. The introductory paragraph of the settlement agreement expressly defines the word "Parties" to include Huisache. The first sentence of paragraph 3 provides that, "The Parties (other than Garza) shall waive their preference rights granted in the 1987 Partition Deed (as defined below) with respect to Tract 2 depicted in the attached plat." Nevertheless, Garza argues, and we agree, that this sentence—in and of itself—confers no additional rights on Huisache. Obviously, Huisache could not waive preference rights it did not have. Thus, even though Huisache is included in the definition of "Parties," if Huisache did not have any preference rights under the 1987 partition deed, it could not waive any preference rights under the deed.

The second sentence of paragraph 3, which is at the heart of the parties' dispute, provides, "Further, the Parties agree than (sic) an exchange or swap of lands between owners of the lands covered by the 1987 Partition Deed shall not trigger the applicability of the preference rights provision set forth in the 1987 Partition Deed with regard to said swapped or exchanged lands." Here, the plain language of the agreement shows Huisache was intended to be included in

this provision. At the time of the agreement, Huisache was an owner of the lands covered by the 1987 partition deed. Thus, this provision suspends the preference right requirement as to any exchange or swap of lands with Huisache.

On appeal, the crux of Garza's argument is that paragraph 3 contemplates only family members swapping or exchanging properties within the Zeferino Villarreal Pasture among themselves. Garza argues, "Reading the two paragraphs together reveals the treatment of Huisache as a third party and an intent to exclude Huisache from the free exchange of swap of Pasture lands as among the family." Garza further contends the trial court's findings and judgment are erroneous because the parties could not have intended Huisache to be included in paragraph 3 because to do so would have invested Huisache with greater rights than it claimed as part of the underlying litigation. As part of this argument, Garza points out that Huisache never took the position in the underlying litigation that it derived any preference rights from the 1987 partition deed; instead, it merely argued that it derived its preference rights from the assignment.[2]

Garza's argument is premised in part on a misinterpretation of the trial court's finding and its judgment. The parties did not reach a settlement agreement that determined the parties' rights under the 1987 partition deed. And, the trial court's judgment, like the settlement agreement, did not determine the parties' rights under the 1987 partition deed. Nothing in paragraph 3 confers a preference right on Huisache, and the trial court did not find that it did. Rather, the trial court found the second sentence of paragraph 3 suspends the preference right requirement in the 1987 partition deed as to owners of lands covered by the 1987 partition deed. Huisache, as an owner of share three in the 1987 partition deed, clearly is an owner of the lands covered by the 1987 partition deed. Thus, any swap or exchange of lands between Huisache and

---

[2]At the enforcement hearing, Huisache's counsel indicated Huisache acquired preference rights by virtue of the assignment and the 1987 partition deed. At oral argument, however, Huisache's counsel indicated the only way Huisache acquired preference rights was by virtue of the assignment.

another owner of the lands covered by the 1987 partition deed suspends the preference right provision set forth in the 1987 partition deed.

We conclude the language of the settlement agreement can be given a certain or definite meaning. We further conclude that the settlement agreement is unambiguous. Generally, when the terms of a written contract are plain and unambiguous, parol evidence is inadmissible to vary the terms of the agreement or to show the construction placed upon them by the parties at the time of its making. *Murphy v. Dilworth*, 151 S.W.2d 1004, 1005 (1941); *Pitman v. Lightfoot*, 937 S.W.2d 496, 516 (Tex. App.—San Antonio 1996, writ denied). Although Garza invites us to examine and construe the terms of the 1987 partition deed in conjunction with construing the settlement agreement, we decline to do so. Because the settlement agreement is unambiguous, the terms of the 1987 partition deed are parol evidence. For the same reason, we decline to consider Leal's testimony about the parties' intent in including paragraph 3 in the settlement agreement.

We also disagree with Garza's contention that we are required to construe the terms of the 1987 partition deed because the settlement agreement incorporates it by reference. The settlement agreement does not incorporate the terms of the 1987 partition deed by reference.

Moreover, contrary to Garza's assertions, paragraph 3 and paragraph 10 are not in conflict. The purpose of sentence one in paragraph 10 is to have the owners of the tracts covered by the 1987 partition deed grant Huisache limited preference rights "in substantially the same form as the preference rights set forth in the 1987 Partition Deed." The purpose of sentences two and three of paragraph 10 is to preclude the use of these preference rights as to sales involving Villarreal heirs, including Garza. As previously discussed, the purpose of sentence one in paragraph 3 is to have the parties who possessed preference rights under the 1987 partition deed

waive those preference rights with respect to tract two. The purpose of sentence two in paragraph 3 is to suspend the preference right requirement between owners of the tracts of land covered by the 1987 partition deed.

Garza argues his interpretation of the second sentence of paragraph 3—that the parties did not intend to suspend the preference right requirement as to exchanges or swaps with Huisache—is the only reasonable interpretation that can be given this sentence. The implication of Garza's argument is that the trial court's contrary interpretation was unreasonable and, therefore, must be avoided. We disagree. "We construe contracts 'from a utilitarian standpoint bearing in mind the particular business activity sought to be served' and 'will avoid when possible and proper a construction which is unreasonable, inequitable, and oppressive.'" *Frost Nat'l Bank v. L & F Dist., Ltd.*, 165 S.W.3d 310, 312 (Tex. 2005) (quoting *Reilly v. Rangers Mgmt., Inc.*, 727 S.W.2d 527, 530 (Tex. 1987)). Based on the express language of the agreement, we conclude the parties intended Huisache to be included in the second sentence of paragraph 3. Nothing from the settlement agreement as written or from the surrounding circumstances supports a different interpretation.

We conclude, as the trial court did, that the settlement agreement provides that an exchange or swap of lands between the owners of the lands covered by the 1987 partition deed, including Huisache, shall not trigger the applicability of the preference right provision set forth in the 1987 partition deed with regard to said swapped or exchanged lands. This interpretation is consistent with the plain language of the settlement agreement and the circumstances under which the settlement agreement was written. In addition, this interpretation is consistent with other parts of the settlement agreement. We hold the trial court did not err in granting the Villarreals's and Huisache's motion to enforce the settlement agreement.

## LACK OF CONSIDERATION

The Garzas argue the settlement agreement was unenforceable because it was not supported by valid consideration.

"Consideration consists of either a benefit to the promisor or a detriment to the promisee." *Robinson v. Nat'l Autotech, Inc.*, 117 S.W.3d 37, 41 (Tex. App.—Dallas 2003, pet. denied). A contract lacking in consideration is unenforceable. *Id*. The surrender of a legal right constitutes valid consideration to support a contract. *In re Alamo Lumber Co.*, 23 S.W.3d 577, 579 (Tex. App.—San Antonio 2000, orig. proceeding [mand. denied]). Giving up the right to have a court decide a disputed issue is sufficient consideration to support a contract. *Lampkin v. Lampkin*, 480 S.W.2d 35, 37 (Tex. Civ. App.—El Paso 1972, no writ). The compromise of doubtful and conflicting claims is good and sufficient consideration to uphold a settlement agreement. *Citgo Refining and Mktg., Inc. v. Garza*, 187 S.W.3d 54, 61 (Tex. App—Corpus Christi 2005, pet. dism'd by agreement) (quoting *McDonough v. First Nat'l Bank*, 34 Tex. 309, 320 (1871)).

Here, the record shows there was valid consideration to support the settlement agreement. The settlement agreement provisions show Huisache waived its preference right as to two sales, ratified Garza's revocation of the assignment, and released Garza and the other defendants from all claims that were made in or could have been made in the cause. Based on the foregoing, we conclude there was valid consideration to support the settlement agreement.

## MUTUAL MISTAKE

The Garzas also argue the settlement agreement was unenforceable based on mutual mistake.

Mutual mistake is an affirmative defense that must be pleaded and proved. *Tobbon v. State Farm Mut. Auto. Ins. Co.*, 616 S.W.2d 243, 245 (Tex. Civ. App.—San Antonio 1981, writ ref'd n.r.e.). A mutual mistake is one common to all parties, wherein each labors under the same misconception respecting a material fact, the terms of the agreement, or the provision of a written instrument designed to embody such an agreement. *Allen v. Berrey*, 645 S.W.2d 550, 553 (Tex. App.—San Antonio 1982, writ ref'd n.r.e.) (citing *Capitol Rod & Gun Club v. Lower Colorado River Auth.*, 622 S.W.2d 887, 892 (Tex. Civ. App.—Austin 1981, writ ref'd n.r.e.)). In order for the defense of mutual mistake to be sustained, there must be fact issues raised to show that all parties to a contract were acting under the same understanding of the same material fact. *Id.* at 553-54 (citing *Newsom v. Starkey*, 541 S.W.2d 468 (Tex. Civ. App.—Dallas 1976, writ ref'd n.r.e.)). Here, the record shows Garza presented no evidence to establish the defense of mutual mistake. Thus, the settlement agreement was not unenforceable based on mutual mistake.

## MOTION TO CLARIFY

Garza's initial motion to enforce or clarify included only a general request that the trial court clarify the settlement agreement. Later, in his written objections to the proposed order enforcing the settlement agreement, Garza expanded his clarification request. In these objections, Garza again made a general request for clarification arguing that "many questions remain[ed]" about the interpretation of the settlement agreement. In addition, Garza asked that another paragraph be added to the settlement agreement.[3]

---

[3]The paragraph was: "Although the Court finds that Huisache Cattle Company, Ltd., pursuant to the agreements set forth in paragraph 3 of the Rule 11 Agreement, can swap or exchange lands covered by and described in the 1987 Partition Deed for other lands covered by and described in the 1987 Partition Deed without triggering the applicability of the preference rights provisions set forth in the 1987 Partition Deed with regard to such swapped or exchanged lands, the lands acquired by Huisache Cattle Company, Ltd., in compliance with the preference rights provisions of the 1987 Partition Deed and/or under the provisions of paragraph 3 of the Rule 11 agreement, shall be free of the preference rights provisions of the 1987 Partition Deed and Huisache Cattle Company, Ltd., shall not, as a result of such acquisitions, acquire any preference rights as to other property conveyed by and described in the 1987 Partition Deed."

As we have previously held, the settlement agreement in this case was clear and definite. Thus, there was no reason for the trial court to clarify its terms. In addition, Garza asked the trial court to add to the language of the settlement agreement. The trial court, however, had no authority to add to the language of the settlement agreement. *See Schaefer*, 124 S.W.3d at 162. In construing a settlement agreement, courts may not rewrite the agreement or add to its language. *See id*. (declining to rewrite the parties' contract or add to its language). For these reasons, we conclude the trial court did not err in denying the motion for clarification.

### ATTORNEY'S FEES

In his final issue, Garza argues that the trial court erred in awarding attorney's fees because the Villarreals and Huisache recovered no breach of contract damages.

A party is prohibited from recovering attorney's fees unless permitted by statute or by agreement between the parties. *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 311 (Tex. 2006); *Travelers Indem. Co. of Connecticut v. Mayfield*, 923 S.W.2d 590, 593 (Tex. 1996). In the present case, there was no attorney's fees agreement between the parties. And, the applicable statute, section 38.001(8) of the Civil Practice and Remedies Code, permits attorney's fees only when damages have been recovered. TEX. CIV. PRAC. & REM. CODE ANN. § 38.001(8) (West 2008); *Green Int'l, Inc. v. Solis*, 951 S.W.2d 384, 390 (Tex. 1997) (holding plaintiff could not recover attorney's fees under section 38.001(8) of the Civil Practice and Remedies Code, when it failed to recover breach of contract damages); *see also Intercont. Group P'ship v. K.B. Home Star, L.P.*, 295 S.W.3d 650, 653 (Tex. 2009).

In response to this issue, the Villarreals and Huisache acknowledge that generally attorney's fees cannot be recovered under section 38.001(8) unless the prevailing party also recovers damages. Nevertheless, the Villarreals and Huisache urge this court to uphold their

award of attorney's fees, arguing *Green Int'l* should be modified to permit recovery of attorney's fees when a settlement agreement is enforced by a party but no actual damages are sought.

As an intermediate appellate court, however, we are not in a position to evaluate the argument that the Texas Supreme Court's holding in *Green Int'l* should be modified. "It is not the function of a court of appeals to abrogate or modify established precedent." *Lubbock Co. v. Trammel's Lubbock Bail Bonds*, 89 S.W.3d 580, 585 (Tex. 2002). As an intermediate court of appeals, we are obligated to follow the precedents of the Texas Supreme Court unless and until the high court overrules them or the legislature supersedes them by statute. Therefore, because the Villarreals and Huisache recovered no damages, we hold the trial court erred in awarding attorney's fees. *See Green Int'l*, 951 S.W.2d at 390; *Medistar Corp. v. Schmidt*, 267 S.W.3d 150, 165 (Tex. App.—San Antonio 2008, pet. denied) (holding the trial court erred in allowing the prevailing party to recover attorney's fees under section 38.001 when it failed to recover breach of contract damages).

## CONCLUSION

We reverse the part of the judgment ordering Garza to pay attorney's fees in the amount of $3,500.00, and render judgment that the Villarreals and Huisache take nothing on their claim for attorney's fees. We affirm the judgment in all other respects.

Karen Angelini, Justice