

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

_____

No. 07-20-00329-CV

_____

CADE PRYOR, APPELLANT

V.

SAMANTHA PRYOR, APPELLEE

On Appeal from the 22nd District Court
Comal County, Texas
Trial Court No. C2014-0987A; Honorable Charles A. Stephens II, Presiding

November 2, 2021

## MEMORANDUM OPINION

Before QUINN, C.J., and PIRTLE and PARKER, JJ.

Cade Pryor, Appellant, appeals from the trial court's *Order Modifying Order in Suit Affecting the Parent-Child Relationship* that included a child support obligation in the amount of $1,461.24. He argues the trial court erred because it should have included a child support obligation of $1,062.60, the amount agreed to during mediation and included in the *Mediated Settlement Agreement* (*Agreement*). Samantha Pryor, Appellee,

contends the trial court did not err because the agreement was ambiguous, and the trial court acted within its discretion in resolving the ambiguity. We will affirm the trial court's order.[1]

**BACKGROUND**

The appeal before us arose from a modification of the parent-child relationship filed by the Texas Attorney General, with counter-petitions to modify filed by both Samantha and Cade. Samantha and Cade attended mediation on October 4, 2019. The mediation lasted some seven hours. At the conclusion of the mediation, both parties and their attorneys signed the *Agreement* at issue here. Samantha and Cade also initialed each page of the *Agreement.* The *Agreement* included one attached handwritten page with a child support calculation created by counsel for Samantha during the mediation. Also attached were four 2018 W-2 tax forms indicating wages earned by Cade. Those forms were not initialed and not specifically incorporated into the *Agreement.*

The attached page containing the child support calculation and the body of the *Agreement* identified Cade's monthly child support obligation as $1,062.60. However, the attached page also contained a method for calculating child support. It provided that "child support is based on [Cade's] representation that he has no rental income and is calculated pursuant to the attached calculations and Exhibits."

---

[1] Originally appealed to the Third Court of Appeals, sitting in Austin, this appeal was transferred to this court by the Texas Supreme Court pursuant to its docket equalization efforts. TEX. GOV'T CODE ANN. § 73.001 (West 2013). Should a conflict exist between precedent of the Third Court of Appeals and this court on any relevant issue, this appeal will be decided in accordance with the precedent of the transferor court. TEX. R. APP. P. 41.3.

The trial court held a hearing on a *Motion to Enter Order* on April 16, 2020, during which the court determined there was a scrivener's error in calculating child support. The court reached this conclusion because it appeared there was a misreading of one of Cade's 2018 W-2 forms attached to the *Agreement* and the child support calculation included income of $2,500 when it should have been $25,000. The court requested Cade file a brief regarding whether the court was permitted to change the child support obligation from the figure included in the *Agreement* to the one it believed was correct. Cade did so on April 22. The court heard a second *Motion to Enter Order* on October 16, 2020, after which the court entered the *Order Modifying Order in Suit Affecting the Parent-Child Relationship* as proposed by Samantha, over Cade's objections. The order set Cade's monthly child support obligation at $1,461.24.

Through this appeal, Cade argues the trial court erred in entering an order that included the $1,461.24 child support obligation figure and requests that this court reverse and remand the case and instruct the trial court to enter a judgment in accordance with the *Agreement*, specifying the child support monthly obligation to be $1,062.60.

### ANALYSIS

Through four issues, Cade argues he was entitled to judgment based on the *Agreement* even if there was a mutual mistake and even in the event the *Agreement* was ambiguous. He further contends the scrivener's error rules are inapplicable here. Samantha argues the *Agreement* is ambiguous even if there was a mutual mistake and the trial court was within its discretion in issuing its order in this matter. We agree with Samantha's contentions.

3

We review a trial court's decision to render judgment on a mediated settlement agreement under Texas Family Code section 153.0071 for an abuse of discretion. *In the Interest of M.E.H.*, No. 14-18-00281-CV, 2020 Tex. App. LEXIS 3467, at *13 (Tex. App.—Houston [14th Dist.] April 23, 2020, pet. denied) (mem. op.) (citing *In re C.C.E.*, 530 S.W.3d 314, 319 (Tex. App.—Houston [14th Dist.] 2017, no pet.)).  Such an agreement is binding on the parties if the agreement:

(1)  provides, in a prominently displayed statement that is in boldfaced type or capital letters or underlined, that the agreement is not subject to revocation;

(2)  is signed by each party to the agreement; and

(3)  is signed by the party's attorney, if any, who is present at the time the agreement is signed.

*See* TEX. FAM. CODE ANN. § 153.0071(d).  If a mediated settlement agreement meets these requirements, a party is entitled to judgment on the agreement notwithstanding Rule 11 of the Texas Rules of Civil Procedure or another rule of law.  *See id.* at § 153.0071(e).

A settlement agreement is a contract, and its construction is governed by legal principles generally applicable to contracts.  *Garza v. Villarreal*, 345 S.W.3d 473, 479 (Tex. App.—San Antonio 2011, pet denied) (citation omitted).  Whether a contract is ambiguous is a question of law.[2]  *Milner v. Milner*, 361 S.W.3d 615, 619 (Tex. 2012) (citing *Coker v. Coker*, 650 S.W.2d 391, 394 (Tex. 1983)).  When the agreement's language can be given a certain and definite meaning, the agreement is not ambiguous, and the contract's construction is a matter for the court.  *Milner*, 361 S.W.3d at 619 (citing *Chrysler*

---

[2] A court may determine ambiguity regardless of whether the parties have raised the issue.  *Garza*, 345 S.W.3d at 480 (citing *Coker v. Coker*, 650 S.W.2d 391, 392-95 (Tex. 1983)).

4

*Ins. Co. v. Greenspoint Dodge of Houston, Inc.*, 297 S.W.3d 248, 252 (Tex. 2009) (per curiam)). However, if the agreement is susceptible to more than one reasonable interpretation, the agreement is ambiguous, creating a fact issue on the parties' intent. *Milner*, 361 S.W.3d at 619 (citing *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003)).

In construing a written contract, the primary concern of the court is to ascertain the true intentions of the parties as expressed in the instrument. *Webster*, 128 S.W.3d at 229 (citing *R & P Enters. v. LaGuarta, Gavrel & Kirk, Inc.*, 596 S.W.2d 517, 518 (Tex. 1980); *City of Pinehurst v. Spooner Addition Water Co.*, 432 S.W.2d 515, 518 (Tex. 1968)). To achieve this objective, the court must examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless. *Webster*, 128 S.W.3d at 229 (citation omitted). No single provision taken alone will be given controlling effect; instead, all the provisions must be considered with reference to the whole instrument. *Id.* (citations omitted).

It is undisputed that the *Agreement* at issue here meets each of the requirements set forth above and is thus binding on the parties.[3] What is in dispute is whether the *Agreement* contained a scrivener's error, whether the parties operated under a mutual

---

[3] The first page of the mediated settlement agreement states as follows:

It is the intention and agreement of the parties that:

**THIS MEDIATED SETTLEMENT AGREEMENT IS NOT SUBJECT TO REVOCATION AND IS BINDING ON ALL PARTIES.**

**EACH PARTY TO THIS AGREEMENT IS ENTITLED TO JUDGMENT ON THE MEDIATED AGREEMENT ATTACHED.**

**THIS MEDIATED SETTLEMENT AGREEMENT HAS BEEN REVIEWED BY THE PARTIES AND THEIR ATTORNEYS, IF REPRESENTED, BEFORE SIGNING.**

mistake, or whether the *Agreement* is ambiguous with regard to the child support obligation such that the trial court acted within its discretion to alter the monthly obligation in its order or whether the trial court was required to include in its order the child support figure set forth in the *Agreement.*

Cade contends the scrivener's error rules are inapplicable here and further asserts that even if the *Agreement* is ambiguous, the "ambiguity is considered a drafting dispute," requiring arbitration with the mediator. Samantha disagrees, arguing the *Agreement* is ambiguous and the trial court was within its discretion to examine and consider the entire *Agreement* and harmonize and give effect to each provision.

The page attached to the *Agreement* containing the child support calculation and the body of the *Agreement* identified Cade's monthly child support obligation as $1,062.60. It is that figure Cade insists must be included in the final order because the *Agreement* is binding on the parties. However, the attached page also contained a method for calculating child support. It provided that "child support is based on [Cade's] representation that he has no rental income and is calculated pursuant to the attached calculations and Exhibits." The four W-2 forms relating to Cade's wages were attached as exhibits to the *Agreement.* The trial court identified an error when the child support obligation was determined during mediation. That error came from a misreading of one of the W-2 forms. In the initial calculation, the wages that were included were $2,500. However, a clear copy of the W-2 shows those wages should have been $25,000, causing a discrepancy in the proper amount of the monthly child support obligation. Therefore, the record shows there is a conflict between the sum for child support in the *Agreement* and the sum that is derived from the method for calculating child support that was also

6

included in the *Agreement.* The two cannot be harmonized in a way that gives effect to all provisions of the *Agreement.* As such, the *Agreement* is ambiguous.

In both hearings, the trial court characterized the issue here as a "scrivener's error." In the first hearing, the court acknowledged that it could not modify a mediated settlement agreement but believed that "when there's an error such as this, an obvious scrivener's error—what I call a scrivener's error—I think that's what the law refers to it is that I can change what would otherwise be just a simple addition error." In the second hearing, after reiterating its belief that there was a scrivener's error in the matter, the court concluded "the correct child support should be $1,461.24."

Cade argues the issue here is not a clerical or scrivener's error. A scrivener's error is an error that is clerical in nature. *See, e.g., Ramirez v. Ramirez*, No. 03-18-00200-CV, 2019 Tex. App. LEXIS 2897, at *13 (Tex. App.—Austin April 11, 2019, no pet.) (mem. op.) (noting the discrepancy between the informal settlement agreement and the final decree of divorce was a scrivener's error in drafting, i.e., a clerical error); *Joe T. Garcia's Enterprises, Inc. v. Snadon*, 751 S.W.2d 914, 917 (Tex. App.—Dallas 1988, writ denied) (noting that a correction deed is executed and recorded for the unique purpose of correcting a scrivener's error in the description of the property). Citing *Escobar v. Escobar*, 711 S.W.2d 230, 231-32 (Tex. 1986), Cade describes a scrivener's error as one that "occurs when there is a discrepancy between the decree and the judgment entered, that was made by mistake during drafting of the order."

What we have before us is of a slightly different nature. While the error originated from a misreading of one of the W-2 forms utilized to calculate Cade's monthly child

support obligation, i.e., misreading income of $2,500 rather than $25,000, we cannot say the resulting discrepancy between the stated sum of $1,062.60 and the sum calculated by the trial court of $1,461.24 was simply a clerical mistake. It was not a simple transcription error or a failure to transfer the proper sum. The handwritten exhibit attached to the *Agreement* states "Father shall pay mother beginning Nov 1, 2019 $1062.60 per month child support for 3 children. Child support is based on Father's representation that he has no rental income and is calculated pursuant to the attached calculation and Exhibits." The stated sum of $1,062.60 and the sum derived from the exhibits as stated do not yield the same sum. Accordingly, the *Agreement* contains contradictory terms such that it is susceptible to more than one reasonable interpretation and creates a fact issue on the parties' intent. We cannot simply accept Cade's position that the stated sum of $1,062.60 is correct because to do so, we would necessarily ignore the statement that "Child support is based on Father's representation that he has no rental income and is calculated pursuant to the attached calculation and Exhibits." The trial court was thus within its discretion to determine the proper calculation using the attached exhibits to give full effect to all terms in the *Agreement*.

We note also Cade's argument that if we determine the *Agreement* to be ambiguous, the matter must be returned to the mediator. Cade cites to *Diggs v. Diggs*, No. 14-11-00854-CV, 2013 Tex. App. LEXIS 8500, at *36-37 (Tex. App.—Houston [14th Dist.] July 11, 2013, no pet.) (mem. op.) for support for his assertion. In *Diggs*, the court found there was a fact question regarding the intent of the parties as reflected in the mediated settlement agreement regarding which companies were awarded to the husband. *Id.* The court ordered the parties to return to the mediator for binding arbitration

to resolve the issue. *Id.* That case is distinguishable, however. There, the court did not have before it the necessary information to resolve the ambiguity. The trial court did not find additional mediation necessary given that the information required to make a calculation per the requirements of the *Agreement* was attached to the *Agreement*. Moreover, we note the record indicates that the mediator was contacted about the discrepancy but "he declined to arbitrate."

Lastly, we address Cade's assertion that the *Agreement* cannot be modified in the event of a mutual mistake. Mutual mistake is an affirmative defense that must be pleaded and proved.[4] *Garza*, 345 S.W.3d at 483 (citation omitted). A mutual mistake occurs when the parties to an agreement have a common intention, but the written contract fails to reflect that intent. *AmeriGas Propane, L.P. v. Aboytes-Muñiz*, No. 09-18-00122-CV, 2019 Tex. App. LEXIS 3992, at *18 (Tex. App.—Beaumont May 16, 2019, pet. denied) (citation omitted). To prove mutual mistake, a party must show (1) the parties' true agreement and (2) that the instrument incorrectly reflects that agreement because of a mutual mistake. *Id.* (citation omitted). Samantha agrees that if the *Agreement* contained a mistaken sum or a mistaken calculation exhibit to which both parties had erroneously agreed, Cade would be correct. *See, e.g., Kott v. Kott*, 03-06-00398-CV, 2008 Tex. App. LEXIS 1464, at *7-8 (Tex. App.—Austin Feb. 29, 2008, no pet.) (mem. op.). However, she argues, the *Agreement* here contains both a sum and a method for calculating the sum using the attached W-2 forms. Because both are present in the *Agreement*, we have before us an ambiguity in the instrument, not a simple mutual mistake. Further, the record does not contain proof of the necessary elements to show a mutual mistake occurred

---

[4] It appears from the record that mutual mistake was discussed only in Cade's brief prepared at the request of the trial court after the first hearing.

9

here.  *See Garza*, 345 S.W.3d at 483.  Accordingly, we resolve Cade's appellate issues against him.

CONCLUSION

Having overruled Cade's appellate issues, we affirm the trial court's *Order Modifying Order in Suit Affecting the Parent-Child Relationship.*

Patrick A. Pirtle
Justice