

# Fourth Court of Appeals
## San Antonio, Texas

### OPINION

No. 04-14-00641-CV

Robert **MARX** and Debbie MARX,
Appellants

v.

**FDP, LP**,
Appellee

From the 81st Judicial District Court, Wilson County, Texas
Trial Court No. 12-03-0101-CVW
Honorable Stella Saxon, Judge Presiding

Opinion by:   Patricia O. Alvarez, Justice

Sitting:   Marialyn Barnard, Justice
Patricia O. Alvarez, Justice
Jason Pulliam, Justice

Delivered and Filed:  August 19, 2015

AFFIRMED

This case arises from a contractual dispute stemming from a Farm and Ranch Contract between Appellants Robert Marx and Debbie Marx, as sellers, and Appellee FDP, LP, as buyer. The Farm and Ranch Contract was modified by an August 27, 2013 Mediated Settlement Agreement and clarified on May 12, 2014, by an arbitration award.  In their appeal, the Marxes allege the trial court erred in (1) granting FDP's motion for summary judgment on specific performance based on an unenforceable MSA previously rescinded by the Marxes, (2) entering a judgment that awarded FDP a future option to purchase the remainder of the Marxes' Homestead

Property when no independent consideration was given for that option, and (3) granting FDP's motion for summary judgment when that motion did not address the Marxes' affirmative defenses. We affirm the trial court's judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

**A.      Farm and Ranch Contract**

On January 27, 2012, the Marxes and FDP entered into a Farm and Ranch Contract, pertaining to real property in Wilson County, Texas, described as "approximately 500 acres to be surveyed out of a tract of land containing 521.79 acres further described in exhibit 'A.'" Exhibit A contained field notes for a 326.047-acre tract and a 186.152-acre tract. The Marxes agreed to supply FDP with a new survey.

The sale price of $1,875,000.00 ($3,750.00 per acre) was to be paid pursuant to a Seller Financing Addendum to the Farm and Ranch Contract. The Addendum provided for payment in the form of $300,000.00 in cash and a seller-financed note in the amount of $1,575,000.00, with an annual interest rate of 4.5% payable in 180 monthly installments of $12,048.64. The closing on the contract was to occur on or before March 15, 2012. The Farm and Ranch Contract also included the following "Special Provisions":

> Buyer and Seller agree to the following details to be worked out before closing:
> 1. Seller will survey out approximately 21 acres which will not [be] convey[ed] with this sale.  2. Seller will sign a first right of refusal and option agreement for the 21 acres which will allow buyer to purchase the property in the future.  3. Seller will retain an easement for access to the 21 acres.  4. Seller agrees to fence the 21 acres within 120 days after closing.

The Marxes subsequently refused to close on the contract and sell the property to FDP.

**B.     Mediated Settlement Agreement**

On March 12, 2012, FDP sued the Marxes[1] for specific performance and damages. With both sides represented by counsel, the parties mediated on May 22, 2013, and August 27, 2013, and entered into an MSA[2] which contained the following terms:

- FDP agreed to purchase approximately 421 acres from the Marxes for $5,000.00 per acre—"Closing per existing EMK—October 1, 2013";[3]

- the Marxes agreed to retain the Homestead Property for no longer than eight years after closing;

- the parties were to mutually agree on the Homestead Property, not to exceed one hundred acres;

- if the parties could not agree on what constituted the Homestead, the issue would be submitted to arbitration;

- FDP maintained exclusive option to purchase the Homestead Property; and

- all claims and causes of action between the parties, except for the undertakings in the MSA, were mutually released.

The parties further represented and warranted that:

(v) this Settlement Agreement constitutes the entire agreement and understanding between the parties; (vi) [the parties] have entered into this Settlement Agreement of their own free will; and (vii) all prior and contemporaneous agreements, understandings, representations and statements, whether written or oral, are merged herein.

The MSA was filed with the district court on September 3, 2013, as a Rule 11 agreement.

**C.     Motion to Enforce and Subsequent Pleadings**

On September 16, 2013, FDP filed a motion to enforce the MSA, and the Marxes filed objections to the MSA. Two weeks later, FDP filed its Second Amended Original Petition specifically pleading that the MSA had been executed and seeking its enforcement under a breach

---

[1] FDP also sued the Marxes' attorney, Diego Lopez, however, Lopez is not a party to this appeal.

[2] The parties interchangeably use the term "Rule 11" and "mediated settlement agreement" for the agreement reached during mediation on August 27, 2013. For purposes of this opinion, we use the term "MSA" to represent this signed agreement.

[3] The parties appear to agree the term "EMK" is a commonly used acronym for "earnest money contract."

of contract claim. FDP alleged it was "ready, able and willing to close the Contracts," and it "secured a commitment for financing, but the interest rate would be guaranteed for so many days, and then could be adjusted higher." FDP prayed, among other things, for specific performance.

The Marxes filed a supplemental answer raising several affirmative defenses to the MSA including (1) ambiguity, (2) failure of conditions precedent, (3) fraud, (4) the Marxes' impossibility of performance, (5) lack of mutuality, (6) mutual mistake, and (7) lack of consideration. The Marxes' pleading contended the MSA left "essential elements of the contract for future negotiation and agreement." These "uncertain" terms included:

> the size, location and boundaries of the land to be sold; the identity of the buyer, the manner in which the sale price is to be paid; the portion of the sale price which is to be paid in cash; and the portion of the sales price which is to be owner financed.

Without defining these elements, the Marxes argued their performance under the MSA was impossible and the MSA was not susceptible to specific performance. The Marxes therefore "rescinded their consent to the mediates [sic] settlement agreement and hereby inform the Court that the agreement fails to meet the requirements of a binding and enforceable agreement."

### D.     Second Mediation and Arbitration

On October 23, 2013, during a hearing on FDP's motion to enforce, the trial court ordered the parties back to mediation. Three weeks later, during the mediation on November 14, 2013, the mediator advised the trial court that mediation was unsuccessful, and only one party wished to pursue arbitration pursuant to the MSA. That same day, the trial court ordered the parties to arbitrate the issue of designation of the 100-acre Homestead Property. Neither party lodged a written objection.

Pursuant to the MSA, the arbitrator ordered both parties to submit a survey of the 421-acre tract and the 100-acre Homestead Property tract. The arbitrator's April 14, 2014 ruling included

a map and metes and bounds descriptions of the 100-acre and 417.335-acre tracts. The arbitrator further ordered costs of the arbitration charged against the Marxes.

**E.      Entry of Final Judgment**

On May 12, 2014, the trial court confirmed the arbitration award and awarded arbitrator's fees, surveyor's fees, attorney's fees, and expenses to FDP.

On July 9, 2014, FDP moved for final summary judgment for specific performance based on the Farm and Ranch Contract, the MSA, and the order confirming the arbitration award. On August 4, 2014, the Marxes filed their response, asserting the following arguments in opposition to FDP's request for specific performance:

- the MSA contained a patent ambiguity in that its sale price did not conform to the financing figures shown in the Seller Financing Addendum to the Farm and Ranch Contract,
- the Homestead Property option agreement was invalid because of lack of consideration,
- FDP lacked standing to prosecute the suit, and
- FDP failed to act through its general partner.

On August 11, 2014, the trial court signed a Final Judgment in favor of FDP, awarding specific performance obligating FDP to pay the Marxes a purchase price of $2,086,675.00, consisting of $300,000.00 in cash and a promissory note at 4.5% interest for $1,786,675.00 payable in 180 monthly installments of $13,667.94, and FDP was awarded attorney's fees.

On appeal, the Marxes contend the trial court erred in granting judgment for FDP because the Marxes withdrew their consent to the MSA, facts precluded enforcement of the MSA, and FDP's motion for summary judgment failed to address the Marxes' affirmative defenses. The Marxes also argue the future option to purchase the Homestead Property was unenforceable because it was unsupported by consideration.

We first address the issues pertaining to the motion for summary judgment.

**MOTION FOR SUMMARY JUDGMENT**

The Marxes complain the trial court erred in granting FDP's traditional motion for summary judgment on specific performance because (1) the motion was based on an unenforceable agreement that was previously rescinded, and (2) FDP failed to address the Marxes' affirmative defenses in the motion.

## A.      Standard of Review

To prevail on a traditional motion for summary judgment, the movant must show "there is no genuine issue as to any material fact and the [movant] is entitled to judgment as a matter of law." TEX. R. CIV. P. 166a(c); *accord Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex. 1985). In our review of the trial court's judgment, we examine "the evidence presented in the motion and response in the light most favorable to the party against whom the summary judgment was rendered, crediting evidence favorable to that party if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not." *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009); *see City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). "We indulge every reasonable inference and resolve any doubts in the nonmovant's favor." *Rhône–Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 223 (Tex. 1999); *accord Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 756 (Tex. 2007) (per curiam). A defendant moving for traditional summary judgment must conclusively disprove at least one essential element of each of the plaintiff's claims. *Elliott–Williams Co. v. Diaz*, 9 S.W.3d 801, 803 (Tex. 1999); *Doe v. Boys Clubs of Greater Dall., Inc.*, 907 S.W.2d 472, 476–77 (Tex. 1995).

On appeal, we do not consider grounds not raised in the trial court in opposition to a summary judgment motion. *City of Hous. v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 676 (Tex. 1979). A nonmovant may not urge on appeal any and every new ground, nor can he resurrect grounds that he abandoned at the hearing. *Id.*

**B.      Specific Performance**

Specific performance is an equitable remedy that may be awarded, at the trial court's discretion, for a breach of contract, *Stafford v. S. Vanity Magazine, Inc.*, 231 S.W.3d 530, 535 (Tex. App.—Dallas 2007, pet. denied), and is an alternative remedy to damages, *Levetz v. Sutton*, 404 S.W.3d 798, 805 (Tex. App.—Dallas 2013, pet. denied) (citing *Paciwest, Inc. v. Warner Alan Props., LLC*, 266 S.W.3d 559, 571, 575 (Tex. App.—Fort Worth 2008, pet. denied)).  When the recovery of monetary damages is inadequate to compensate the complainant, the transgressor is compelled to perform the promise of its contract.  *S. Plains Switching, Ltd. v. BNSF Ry.*, 255 S.W.3d 690, 703 (Tex. App.—Amarillo 2008, pet. denied).

"Specific performance is not a separate cause of action, but rather it is an equitable remedy used as a substitute for monetary damages when such damages would not be adequate."  *Stafford*, 231 S.W.3d at 535; *see also Davis v. Luby*, No. 04–09–00662–CV, 2010 WL 3160000, at *3 (Tex. App.—San Antonio Aug. 11, 2010, no pet.) (mem. op.) ("Specific performance is an equitable remedy that may be awarded at the trial court's discretion upon a showing of breach of contract.").

> [T]o be entitled to specific performance, the plaintiff must show that it has substantially performed its part of the contract, and that it is able to continue performing its part of the agreement.  The plaintiff's burden of proving readiness, willingness and ability is a continuing one that extends to all times relevant to the contract and thereafter.

*DiGiuseppe v. Lawler*, 269 S.W.3d 588, 593 (Tex. 2008) (quoting 25 Richard A. Lord, WILLISTON ON CONTRACTS § 67:15, at 236–37 (4th ed. 2002) (citations omitted)); *accord Stafford*, 231 S.W.3d at 535.  In the context of a real estate contract, compliance with all terms of the contract means that the buyer of land who is seeking specific performance must prove an actual tender of the purchase price.  *DiGiuseppe*, 269 S.W.3d at 594 (citing *Wilson v. Klein*, 715 S.W.2d 814, 822 (Tex. App.—Austin 1986, writ ref'd n.r.e.); *McMillan v. Smith*, 363 S.W.2d 437, 442–43 (Tex. 1962)).

## C.      Withdrawn Consent

In the Marxes first issue on appeal, they contend the trial court's judgment was "based on a mediated settlement agreement after consent to that agreement had been withdrawn by appellants and fact issues raised as to the enforceability of that settlement agreement."   The following two paragraphs of the brief discuss case law regarding when a party may revoke its consent to a settlement agreement.  The brief immediately proceeds into a discussion of a meeting of the minds and essential and material terms.  The Marxes' only argument provides as follows:

> Because the terms of the Seller Financing Addendum to the Farm and Ranch Contract were not amended by the mediated settlement agreement, there has been no meeting of the minds between appellants and appellee as to those material and essential terms.  The mediated settlement agreement is therefore not a complete contract and is rendered unenforceable.

Absent any briefing on whether a *repudiated* settlement agreement can be the basis of a judgment, we conclude the Marxes failed to raise any argument regarding the trial court's rendition of judgment after they withdrew their consent to the MSA.  *See* TEX. R. APP. P. 38.1(i) (stating appellant's brief "must contain clear and concise argument for contentions made, with appropriate citations to the record"); *cf.* TEX. R. CIV. P. 11 ("[N]o agreement between attorneys or parties touching any suit pending will be enforced unless it be in writing, signed and filed with the papers as part of the record . . . . ").  Accordingly, we do not address this issue.

We next turn to the Marxes' argument that the MSA was unenforceable because there was no meeting of the minds on the method of financing.

## D.      Lack of a Meeting of the Minds

### 1.      *Arguments of the Parties*

Neither party disputes entering into an MSA nor that the MSA was merged into the Farm and Ranch Contract.  Their disagreement stems from the method of financing described in the MSA.

The Marxes contend the contract is unenforceable because the MSA changed the sale price and it lacks a method of financing the new price. The Marxes argue the method of financing was a material or essential term in the real estate transaction, and because the MSA's new sale price was indefinite, there was no meeting of the minds. In other words, the MSA failed to address the financing associated with the additional acres and the increased price from the original Seller Financing Addendum contained in the Farm and Ranch Contract. For this reason, the Marxes conclude, the MSA was unenforceable and specific performance was not available to FDP.

FDP contends the Marxes abandoned their ambiguity claim with respect to the applicable financing method and did not preserve for appeal their claim of indefiniteness. Therefore, the Marxes waived these arguments on appeal. We agree with FDP.

2.      *Ambiguity*

A contract is ambiguous if "the contract language is susceptible to two or more reasonable interpretations." *Am. Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 157 (Tex. 2003); *accord Coker v. Coker*, 650 S.W.2d 391, 393–94 (Tex. 1983); *Thompson v. CPN Partners*, *L.P.*, 23 S.W.3d 64, 71 (Tex. App.—Austin 2000, no pet.). A contract is not ambiguous if it is so worded that it can be given a definite or certain legal meaning. *Wal–Mart Stores, Inc. v. Sturges*, 52 S.W.3d 711, 728 (Tex. 2001). Whether a contract is ambiguous is a question of law. *Id.* The court views the entire contract from the perspective of when the parties entered into the contract. *Anglo-Dutch Petrol. Int'l, Inc. v. Greenberg Peden, P.C.*, 352 S.W.3d 445, 449–50 (Tex. 2011). Ambiguity arises when a contract's meaning is uncertain or doubtful, or the contract is reasonably susceptible to more than one meaning. *Schaefer*, 124 S.W.3d at 157.

As the Texas Supreme Court recently reiterated, "'A contract is not ambiguous simply because the parties disagree over its meaning.' Rather, '[i]f a written contract is so worded that it can be given a definite or certain legal meaning, then it is not ambiguous.'" *Kachina Pipeline Co.,*

*Inc. v. Lillis*, No. 13-0596, 2015 WL 3653272, at \*3 (Tex. June 12, 2015) (quoting *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex. 1995) (per curiam) (citations omitted)). Thus, if an ambiguity is present, the trier of fact resolves the ambiguity, and the contract is enforceable once the ambiguous language is resolved. *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003).

3.      *Indefiniteness*

Unlike the trial court's obligation to resolve any ambiguity necessary to enforce a contract, indefiniteness in a contract makes the contract unenforceable. *See Gen. Metal Fabricating Corp. v. Stergiou*, 438 S.W.3d 737, 744 (Tex. App.—Houston [1st. Dist.] 2014, no pet.); *see also Wilson v. Wagner*, 211 S.W.2d 241, 243 (Tex. Civ. App.—San Antonio 1948, writ ref'd n.r.e.) ("[P]rovisions [that] are too indefinite and uncertain to reflect a meeting of the minds of the parties, [cannot] constitute an enforceable contract."). An indefinite contract results when a material or essential term, a term a party "would reasonably regard as [a] vitally important element[] of their bargain," is missing at the time the contract was formed. *Padilla v. LaFrance*, 907 S.W.2d 454, 460 (Tex. 1995); *accord Potcinske v. McDonald Prop. Invs., Ltd.*, 245 S.W.3d 526, 531 (Tex. App.—Houston [1st Dist.] 2007, no pet.); *see also Stergiou*, 438 S.W.3d at 744; *America's Favorite Chicken Co. v. Samaras*, 929 S.W.2d 617, 622 (Tex. App.—San Antonio 1996, pet. denied) (holding contract unenforceable because it failed to contain all material and essential terms). The material or essential terms "must be sufficiently certain to define the rights of the parties." *See New York Life Ins. Co. v. Miller*, 114 S.W.3d 114, 123 (Tex. App.—Austin 2003, no pet.). A contract's material or essential terms are determined on a case-by-case basis. *McCalla v. Baker's Campground, Inc.*, 416 S.W.3d 416, 418 (Tex. 2013) (citing *T.O. Stanley Boot Co. v. Bank of El Paso*, 847 S.W.2d 218, 221 (Tex. 1992)).

When construing a contract, a court "should be reluctant to hold a contract unenforceable for uncertainty." *Guzman v. Acuna*, 653 S.W.2d 315, 319 (Tex. App.—San Antonio 1983, pet. dism'd); *accord Estate of Eberling v. Fair*, 546 S.W.2d 329, 334 (Tex. Civ. App.—Dallas 1976, writ ref'd n.r.e.). Instead, it should construe the contract "in such a manner as to render performance possible rather than impossible." *Guzman*, 653 S.W.2d at 319. The court does not, however, possess "authority to interpolate essential elements in order to uphold the contract." *Id.* (citing *Dahlberg v. Holden*, 238 S.W.2d 699, 701 (Tex. 1951)).

4.      *Analysis*

In their response to FDP's motion for summary judgment for specific performance, the Marxes argued ambiguity, not indefiniteness. Specifically, the Marxes argued that the MSA

> creates [a] *patent ambiguity*, [a] contraction, which renders the new agreement incapable of performance. That section provides, first, that the number of acres being sold by Sellers to Buyer is changed to 421 acres, more or less. Second, it provides that the price per acre is being changed to $5,000. . . . (emphasis added).

The Marxes further argued the MSA was ambiguous because the Farm and Ranch Contract and the Seller Financing Addendum

> each contain other numbers which were not been [sic] changed by the MSA. Section 3A still provides that the cash portion of the sales prices to be paid at closing is $300,000.00. Section 3B still provides that the sum of all financing shall be $1,575,000.00. And Section 3C still provides that the sum of the cash payable at closing and the financing together totals $1,875,000.00, and that number directly *contradicts* the [MSA's] new adjusted sales price of $2,105,000.00.

The Marxes averred the MSA was ambiguous, not that it was indefinite with respect to FDP's obligation to pay $2,086,675.00 in return for the 421 acres and the Homestead Property option.

On appeal, the Marxes contend, for the first time, that the terms of the contract are indefinite. The Marxes argue an absence of a meeting of the minds regarding mutual understanding and assent to the MSA regarding its essential or material terms. The Marxes contend that "[b]ecause the terms of the Seller Financing Addendum to the Farm and Ranch

Contract were not amended by the mediated settlement agreement, there has been no meeting of the minds between appellants and appellee as to those material and essential terms. The mediated settlement agreement is therefore not a complete contract and is rendered unenforceable."

Unlike the ambiguity argument raised before the trial court, the Marxes' appellate argument is based on indefiniteness—a lack of a meeting of the minds. *See Clear Creek Basin Auth.*, 589 S.W.3d at 676; *In re Blankenship*, 392 S.W.3d 249, 255 (Tex. App.—San Antonio, 2012, no pet.). By failing to raise the question of indefiniteness before the trial court, the Marxes waived this issue on appeal. *See Clear Creek Basin Auth.*, 589 S.W.3d at 676; *In re Blankenship*, 392 S.W.3d at 255.

**E.      Affirmative Defenses under Summary Judgment**

The Marxes also argue that because the trial court did not dispose of their affirmative defenses before entering a final judgment, the trial court erred.

*1.      Arguments of the Parties*

We understand the Marxes' argument to be that the trial court erred by granting FDP's traditional motion for summary judgment because FDP did not file a no evidence motion for summary judgment addressing the Marxes' affirmative defenses and thus the trial court did not dispose of the Marxes' affirmative defenses.

*2.      Effect of Pleading an Affirmative Defense*

When the plaintiff moves for traditional summary judgment, it must conclusively prove each element of its cause of action and show its entitlement to summary judgment as a matter of law. *See* TEX. R. CIV. P. 166a(c). If the plaintiff does so, the burden shifts to the defendant to produce evidence creating a genuine issue of material fact as to the challenged element or elements in order to defeat the summary judgment. *See Walker v. Harris*, 924 S.W.2d 375, 377 (Tex. 1996). Under Texas law, a plaintiff is not required to move for summary judgment on the defendant's

affirmative defenses and has no obligation to negate those defenses. *See Brownlee v. Brownlee*, 665 S.W.2d 111, 112 (Tex. 1984); *Woodside v. Woodside*, 154 S.W.3d 688, 691 (Tex. App.—El Paso 2004, no pet.) ("A plaintiff, when moving for summary judgment, is not under any obligation to negate affirmative defenses."); *Nicholson v. Memorial Hosp. Sys.*, 722 S.W.2d 746, 749 (Tex. App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.) (explaining motion for summary judgment movant is not required to conclusively disprove affirmative defenses pled by the nonmovant).

"The defendant's mere pleading of an affirmative defense does not prevent the rendition of summary judgment for a plaintiff who has conclusively established each element of its cause of action as a matter of law." *Wise v. Luke Development, LLC*, No. 04-12-00477-CV, 2013 WL 4483381, at *2 (Tex. App.—San Antonio Aug. 21, 2013, no pet.) (mem. op.) (citing *Brownlee*, 665 S.W.2d at 112). To the contrary, a defendant relying upon an affirmative defense must bring forward sufficient summary judgment evidence to raise an issue of fact on each element of that defense to avoid summary judgment. *See Brownlee*, 655 S.W.2d at 112; *Action Towing, Inc. v. Mint Leasing, Inc.*, 451 S.W.3d 525, 530 (Tex. App.—Houston [1st Dist.] 2014, no writ).

*3.      Analysis*

In *Wise*, this court expressly addressed and rejected a similar argument that a plaintiff's failure to file a no evidence motion for summary judgment on the defendant's affirmative defenses precluded final judgment. *Wise*, 2013 WL 4483381, at *4. We note the Marxes neither raised their affirmative defenses through summary judgment evidence nor filed their own motion for summary judgment. We, therefore, cannot conclude the trial court erred in granting final judgment without addressing the Marxes' affirmative defenses.

**OPTION TO PURCHASE HOMESTEAD PROPERTY**

The Marxes next complain that the trial court erred by including a future homestead option in its final judgment.

### A.    Arguments of the Parties

The Marxes contend the MSA provides FDP an option to purchase the Homestead Property but does not provide for independent consideration for that option.  Because the option lacks consideration, the trial court erred in awarding FDP the Homestead Property option in the final judgment.

FDP argues options need not be supported by independent consideration as long as a single consideration is sufficient to support multiple promises bargained for in an agreement.  Because the MSA is supported by consideration, no independent consideration for the option itself was needed.

### B.    Standard of Review

What constitutes consideration is a question of law and is reviewed de novo.  *Hall v. Hubco, Inc.*, 292 S.W.3d 22, 28 (Tex. App.—Houston [14th Dist.] 2006, pet. denied); *Brownwood Ross Co. v. Maverick Cnty.*, 936 S.W.2d 42, 45 (Tex. App.—San Antonio 1996, writ denied).

### C.    Consideration

Consideration is a fundamental element for any valid enforceable contract.  *Philadelphia Indem. Ins. Co. v. White*, 421 S.W.3d 252, 262 (Tex. App.—San Antonio 2013, pet. filed).  A contract without consideration is unenforceable.  *Garza v. Villarreal*, 345 S.W.3d 473, 483 (Tex. App.—San Antonio 2011, no pet.).  Consideration is a bargained-for exchange of promises or return performance and consists of benefits and detriments to the contracting parties.  *Id.*  "The surrender of a legal right constitutes valid consideration to support a contract."  *Id.* (citing *In re Alamo Lumber Co.*, 23 S.W.3d 577, 579 (Tex. App.—San Antonio 2000, orig. proceeding)).  The parties' compromise on claims in question is sufficient consideration to support the promises bargained for in the agreement.  *Id.*

**D.      Analysis**

Here, the record supports that pursuant to the MSA's provisions, the parties relinquished their disputed claims against each other in return for (1) FDP purchasing 421 acres at $5,000 per acre, (2) the Marxes retaining their Homestead Property for no longer than eight years after closing, and (3) FDP having the exclusive option to purchase the Homestead Property at $5,000 per acre.

The cases relied on by the Marxes are not persuasive for the proposition that independent consideration is necessary when an option is part of a settlement agreement that has the relinquishment of a right as consideration. *See Nat'l Oil & Pipe Line Co. v. Teel*, 68 S.W. 979, 95 Tex. 586, 591 (1902) (discussing whether consideration of $1 for an option constituted sufficient consideration); *Hott v. Pearcy/Christon, Inc*., 663 S.W.2d 851, 854 (Tex. App.—Dallas 1983, writ ref'd n.r.e.) (reviewing whether nonpayment of earnest money made the option unenforceable because of lack of consideration); *Culertson v. Brodsky*, 788 S.W.2d 156, 157 (Tex. App.—Fort Worth 1990, writ denied) (construing whether delivery of an earnest money check to a title company that could not be cashed until after the option expired was consideration for an option to purchase).   Unlike *Hott* and *Culertson*, the Farm and Ranch Contract at issue expressly and unambiguously provided that FDP shall deposit $10,000.00 in earnest money with the title company, i.e., consideration, and FDP deposited the earnest money required by the contract. *Cf. Hott*, 663 S.W.2d at 854.

We need not, however, address whether the earnest money deposited by FDP is sufficient consideration.  Because the MSA provided that the parties agreed to dismiss and release all claims asserted between them with the exception of the undertakings reflected in the MSA, *see Garza*, 345 S.W.3d at 483, we conclude FDP's relinquishment of a legal right to pursue its disputed claims against the Marxes constituted sufficient consideration for the MSA, including the Homestead Property option.  Accordingly, we overrule the Marxes' last issue on appeal.

**CONCLUSION**

Having overruled all of the Marxes' issues on appeal, we affirm the trial court's judgment.


Patricia O. Alvarez, Justice