

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-15-00623-CV

**IN THE ESTATE OF** Marjorie A. **CHILDS**, Deceased

From the Probate Court No. 2, Bexar County, Texas
Trial Court No. 2014-PC-0056
Honorable Tom Rickhoff, Judge Presiding

Opinion By:  Luz Elena D. Chapa, Justice

Sitting:  Karen Angelini, Justice
Rebeca C. Martinez, Justice
Luz Elena D. Chapa, Justice

Delivered and Filed:  April 20, 2016

REVERSED AND REMANDED

Pamela Ann Childs McCaskill and Susan Childs Addison appeal the trial court's summary judgment in favor of their sister, Mollie Childs. In two issues, Pamela and Susan argue the trial court erred by declaring their contract with Mollie is unenforceable as a matter of law and by rescinding the contract. We reverse and remand for further proceedings.

## BACKGROUND

Bertha Childs (the parties' grandmother) bequeathed stock to her daughter (the parties' mother), Marjorie Childs. Bertha's will provided:

> I give all shares of stock owned by me in Campbell Taggart Associated Bakeries, Inc. at the time of my death to my daughter, Marjorie Allen Childs, with the request that she use only the income in cash dividends from said shares during her lifetime and that on her death she make provision for said shares to be divided equally among her daughters, or the issue of any deceased daughter. Should it become wise at any time to sell these shares, it is my desire that the proceeds, or any reinvestment

of the proceeds, be held and disposed of by my daughter at her death in the same manner.

In 1992, Marjorie gifted Mollie $190,000 worth of the stock.

In 2008, Marjorie executed a will that suggested she understood Bertha's will created a life estate in the stock:

> Pursuant to the requirements of the life estate created for my benefit under Section II of the Will of Bertha Allen, the Anheuser Busch stock, which is derived from the Campbell Taggart Associated, Inc., stock addressed in the aforementioned Section II of Bertha Allen's Will, shall be distributed to my daughters and their descendants, per stirpes. Furthermore, and also pursuant to the requirement of the life estate created for my benefit under Section II of Bertha Allen's Will, if at the time of my death I no longer own the Anheuser Busch stock, then the proceeds or reinvestment of the proceeds shall be disctributed [sic] to my daughters and their descendants, per stirpes.

Marjorie thereafter received cash proceeds for her stock from a stock redemption, and entrusted Mollie with placing the proceeds into brokerage accounts.

Two separate "transfer on death" brokerage accounts were established. One account, at Federated Securities Inc., contained two-thirds of the proceeds. Marjorie's daughters were designated as the beneficiaries: Mollie (33%), Pamela (34%), and Susan (33%). The other brokerage account, at Raymond James & Associates, contained the remaining third of the proceeds. Mollie was designated as the sole beneficiary of the Raymond James account. Mollie took the account paperwork to Marjorie, who was living in an assisted-living community, and Marjorie signed the paperwork to set up the accounts.

Pamela and Susan threatened to sue Mollie for abusing her position of power to obtain a greater-than-equal portion of the stock proceeds. Mollie was asked to sign an agreement that, upon Marjorie's death, would divide the accounts equally:

> The entire assets subject to the life estate created by the will of Bertha Allen and referenced in the will of Marjorie A. Childs signed November 20, 2008, are contained within 2 brokerage accounts . . . . One brokerage account is held . . . at Federated Securities, the other . . . at Raymond James & Associates. In the event

Pamela, Susan and Mollie are living at the time of death of Marjorie A. Childs, the accounts are to be divided and distributed as follows:

The Federated Securities account to be split equally and distributed between Pam and Susan; the Raymond James account to be distributed in its entirety to Mollie.

After Pamela, Susan, and Mollie signed the agreement, Marjorie passed away.

Mollie sued Pamela and Susan seeking a declaration that the contract was unenforceable. The trial court granted Mollie's traditional motion for summary judgment, "find[ing] that the Agreement . . . is unenforceable and rescinded as a matter of law." Pamela and Susan appeal, arguing the trial court improperly granted summary judgment.

## STANDARD OF REVIEW

"We review a summary judgment de novo." *City of San Antonio v. San Antonio Exp.-News*, 47 S.W.3d 556, 561 (Tex. App.—San Antonio 2000, pet. denied). To prevail on a traditional motion for summary judgment, the movant must show "there is no genuine issue as to any material fact and the [movant] is entitled to judgment as a matter of law." TEX. R. CIV. P. 166a(c); *accord Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex. 1985). A plaintiff moving for summary judgment on her claim must conclusively prove all the elements of her cause of action as a matter of law. *Rhône-Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 223 (Tex. 1999). To determine whether a plaintiff-movant has met her burden, we examine the evidence presented in the motion and response. *Jacobs v. Huser Const., Inc.*, 429 S.W.3d 700, 702 (Tex. App.—San Antonio 2014, no pet.). Once the movant has established a right to summary judgment, the burden shifts to the respondent to present evidence that would raise a genuine issue of material fact. *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex. 1979).

We take as true all evidence favorable to the nonmovant, resolve all conflicts in the evidence in the non-movants' favor, and "indulge every reasonable inference and resolve any doubts in the nonmovant's favor." *Rhône-Poulenc, Inc.*, 997 S.W.2d at 223; *City of San Antonio*,

47 S.W.3d at 561. We view the evidence in the light most favorable to the party against whom the summary judgment was rendered, "crediting evidence favorable to that party if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not." *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009).

ENFORCEABILITY OF THE AGREEMENT

Pamela and Susan argue the trial court erred by granting Mollie's summary judgment and declaring the contract unenforceable as a matter of law. Mollie raised two traditional grounds for summary judgment: lack of consideration and mutual mistake. The trial court's order contained its substantive ruling that the contract was unenforceable as a matter of law, and this is the question we must decide on appeal. However, because the trial court did not specify the underlying basis for its ruling, we must affirm if either ground supports the trial court's ruling. *See Merriman v. XTO Energy, Inc.*, 407 S.W.3d 244, 248 (Tex. 2013); *see also* TEX. R. APP. P. 47.1.

### A. Lack of Consideration

In support of her "lack of consideration" ground for summary judgment, Mollie argued Pamela and Susan "gave up no right and suffered no detriment." Consideration is necessary to have a valid enforceable contract. *Marx v. FDP, LP*, 474 S.W.3d 368, 378 (Tex. App.—San Antonio 2015, pet. denied.). "Consideration is a bargained-for exchange of promises or return performance and consists of benefits and detriments to the contracting parties." *Id.* "The surrender of a legal right constitutes valid consideration to support a contract." *Id.* "The compromise of doubtful and conflicting claims is good and sufficient consideration to uphold a settlement agreement." *Garza v. Villarreal*, 345 S.W.3d 473, 483 (Tex. App.—San Antonio 2011, pet. denied). "To constitute valid consideration, forbearance to sue must be upon a right asserted in good faith, and as to a contention which the party relying on the forbearance had reasonable grounds for believing would be upheld." *S.A. Dome, L.L.C. v. Maloney Dev. P'ship, Ltd.*, No. 04-

04-00586-CV, 2005 WL 1398106, at *3 (Tex. App.—San Antonio June 15, 2005, no pet.) (mem. op.). The party alleging lack of consideration has the burden to rebut the presumption that a written contract is supported by consideration. *Doncaster v. Hernaiz*, 161 S.W.3d 594, 603 (Tex. App.—San Antonio 2005, no pet.).

Because the record establishes the agreement was in writing, Mollie had the burden to rebut the presumption that the agreement is supported by consideration. *See id.* Mollie argues the only possible consideration is the exchange of promises contained in the agreement, but Pamela and Susan obtained a greater interest in the Federated Securities account without giving Mollie any benefits under the agreement.

However, the agreement does not state the writing is the entire agreement of the parties; there were no other promises, agreements, or warranties; or all prior communications were superseded unless expressly incorporated therein. Pamela and Susan argue other communications between the parties show they would forbear their right to sue Mollie if Mollie signed the agreement. In response to Mollie's motion, Susan produced an affidavit to which she swore:

> Pam threatened to sue Mollie if she did not sign the. . . Agreement. Mollie responded, 'Pam please don't do this . . . I don't want or need your money. I will not take your money . . . if you want me to sign something you draft reassuring you I don't want and will not want the . . . life estate I will do so.' Shortly after this and in response  . . . Mollie edited, drafted, and signed the . . . Agreement.

In response to Mollie's motion, Pamela also produced an affidavit to which she swore Mollie was entrusted to set up the brokerage accounts and did so even though "[Marjorie] was consistently clear . . . that each of us would have an equal share of her assets." Pamela also produced an email exchange between her and Mollie, and in the emails Pamela explained Susan consulted with an attorney about suing Mollie and stated she was "thinking about and also seeking advice on this." In response was Mollie's email stated, "Pam please don't do this,.. [sic] I don't want or need your money."

The evidence, viewed in a light most favorable to Pamela and Susan, raises a genuine issue as to whether Mollie entered into the agreement to avoid a lawsuit over her establishing the brokerage accounts. Reasonable inferences from the summary judgment evidence are that (1) Marjorie intended her stock proceeds to be divided equally among her daughters; (2) Mollie acted unlawfully, unfairly, or negligently in helping Marjorie establish the brokerage accounts; (3) if Mollie was not negligent, Mollie's intent was to obtain a larger share of Marjorie's stock proceeds at Pamela and Susan's expense; and (4) the parties believed the agreement, which ensured all parties would obtain equal shares of the stock proceeds upon their mother's death, would prevent litigation about Mollie's acts in establishing Marjorie's brokerage accounts. We must draw these inferences. *See Rhône-Poulenc*, 997 S.W.2d at 223.

Mollie argues the only possible consideration for the agreement was that Pamela and Susan gave up their interest in the Raymond Jones account, in which they actually had no interest, and thus she received no benefit from the agreement. Initially, Mollie's affidavit testimony, "I received no value or benefit from executing this Alleged Agreement," is conclusory and not competent summary judgment evidence. *See Brownlee v. Brownlee*, 665 S.W.2d 111, 112 (Tex. 1984) (recognizing testimony stating no more than a legal conclusion is conclusory and is insufficient for summary judgment purposes). Moreover, Pamela and Susan stated in their depositions they believed they gave up their interest in the Raymond James account, but they did not state this was the only consideration for the contract. Pamela and Susan also did not admit their forbearance to sue Mollie for her role in establishing the brokerage accounts was not part of the consideration for the agreement. *See* TEX. R. CIV. P. 166a(c).

Mollie further argues Pamela and Susan did not assert their right to sue in good faith. Mollie does not cite to any summary judgment evidence to support this argument. We conclude Mollie did not meet her burden to conclusively establish the lack of consideration. *See id.*

**B. Mutual Mistake**

In support of her "mutual mistake" ground, Mollie argued the parties were mutually mistaken that Bertha's will gave Marjorie only a life estate in the stock. Pamela and Susan argue "the mistake—if there was one—is a mistake of law (the interpretation of language in a Will), not a mistake of fact" and there are fact issues as to whether Mollie was actually mistaken, whether the mistake was mutual, and whether the mistake was material.

"The elements of mutual mistake are . . . (1) a mistake of fact, (2) held mutually by the parties, and (3) which materially affects the agreed-upon exchange." *City of The Colony v. N. Tex. Mun. Water Dist.*, 272 S.W.3d 699, 735 (Tex. App.—Fort Worth 2008, pet. dism'd). "It is the general rule that a mutual mistake of law will not furnish grounds for avoiding a contract." *Harris v. Sanderson*, 178 S.W.2d 315, 320 (Tex. Civ. App.—Eastland 1944, writ ref'd w.o.m.). "When [a will] is not ambiguous, the intentions of a party to it, particularly as to the thing or estate reserved or conveyed, is a question of law." *Warner v. Patton*, 19 S.W.2d 1111, 1112 (Tex. Civ. App.—Amarillo 1929, writ ref'd).

If Mollie, Pamela, and Susan were mistaken that Bertha's will created a life estate, then the mistake is not one of fact, it is one of law. Before granting Mollie's summary judgment declaring the contract unenforceable, the trial court had determined there was no dispute about the language of Bertha's will and that, as a matter of law, Bertha's will did not create a life estate. Furthermore, Pamela and Susan produced some evidence showing their mistaken belief that Bertha's will created a life estate was neither mutual nor material. Mollie believed that because Bertha's will created a life estate, the transfer-on-death designations on the brokerage accounts were not effective. Pamela and Susan's evidence that they would pursue legal action against Mollie for how she helped establish the brokerage accounts showed they believed the transfer-on-death

designations were effective despite the life estate. We therefore hold Mollie did not meet her burden to conclusively establish a mutual mistake of fact. *See* TEX. R. APP. P. 166a(c).

## CONCLUSION

Mollie did not conclusively establish either the lack of consideration or a mutual mistake of fact. We therefore hold the trial court erred by granting summary judgment that the contract was enforceable and rescinded as a matter of law. We reverse the trial court's order granting summary judgment and remand for further proceedings.

Luz Elena D. Chapa, Justice