Fourth Court of Appeals
San Antonio, Texas



## MEMORANDUM OPINION

No. 04-21-00150-CV

**IN THE ESTATE OF MARIA LUISA AGUILAR**

From the County Court at Law No. 1, Webb County, Texas
Trial Court No. 2020PB5000085-L1
Honorable Hugo Martinez, Judge Presiding

Opinion by:  Patricia O. Alvarez, Justice

Sitting:  Patricia O. Alvarez, Justice
Luz Elena D. Chapa, Justice
Lori I. Valenzuela, Justice

Delivered and Filed: May 24, 2023

AFFIRMED

In 2020, Maria Luisa Aguilar died intestate, and the trial court appointed her sister Karla Belen Garcia as the dependent administratrix of the estate. Karla and Roberto Aguilar Jr., Maria Luisa's husband, reached a settlement agreement, but then Roberto sought to have it set aside. The trial court denied Roberto's motion, enforced the Rule 11 agreement, and Roberto appeals.

We affirm the trial court's orders.

### BACKGROUND

Maria Luisa died intestate on May 7, 2020. She was survived by her husband Roberto, Appellant; her mother Maria Magdalena Garcia (Mom); and six adult siblings, including Karla, Appellee. Karla and her siblings assigned their interests in Maria Luisa's estate to Mom.

**A.      Dependent Administratrix**

Subsequently, Karla applied for appointment as the independent administrator of her sister's estate, but Roberto objected "to an independent administration in this case."

After considering Karla's application and Roberto's objection, the trial court granted Karla's application and appointed her as dependent administratrix of Maria Luisa's estate.

**B.      Inventory Filed**

As administratrix, Karla filed the inventory, appraisement, and list of claims. It showed Maria Luisa's house as her separate property, and it listed a claim for $60,000 by Mom. Roberto timely objected to the inventory and claims; he argued that the house was community property and there was no evidence to support Mom's claim.

**C.      Settlement Agreement**

After Maria Luisa's death, Roberto continued to live in the house. The house was the estate's primary asset, and Karla wanted to sell it. After some negotiations with Karla and Mom, Roberto accepted a settlement offer. As part of the agreement, Roberto was to relinquish any claim to the house and move out of it in exchange for, inter alia, a $30,000 payment.

Roberto and his attorney signed the settlement agreement, and it was filed with the court on November 18, 2020. About three weeks later, Roberto changed lawyers; his new counsel filed an original answer which revoked Roberto's consent to the settlement agreement. Less than two weeks after that, Roberto moved to set aside the agreement. His motion alleged that he signed the settlement agreement "under pressure," but it did not allege he lacked adequate time for discovery.

**D.      Order Approving Inventory, Judgment Declaring Heirship**

The next day, the trial court held a scheduled hearing on the inventory; neither Roberto nor his counsel appeared. Karla reminded the court that the parties had filed a Rule 11 agreement, which the trial court accepted. The trial court signed an order approving the inventory,

appraisement, and list of claims. The trial court also signed a judgment declaring heirship, which ordered that Roberto and Mom each owned one-half of the estate's separate real property.

## E. Parties' Motions

Roberto moved to set aside the Rule 11 agreement, disqualify Karla's counsel, and remove Karla as the administratrix of the estate.

Karla filed an ex parte emergency motion for enforcement of the settlement agreement. Karla's motion alleged that, in accordance with the Rule 11 agreement, she was prepared to tender payment to Roberto, but he had failed to vacate the premises as required, he had not paid the utility bills or the taxes for the house, and he was interfering with her ability to sell it. Karla also filed an emergency application for injunctive relief.

The trial court granted Karla's emergency motion to enforce the settlement agreement, and it set the parties' respective motions to be heard.

## F. Hearings, Orders

After an evidentiary hearing, the trial court denied Roberto's motion to disqualify Karla's counsel. A few days later, after another hearing, the trial court denied Roberto's motion to remove Karla as the dependent administratrix, it granted Karla's motion to enforce the Rule 11 agreement, and it issued a permanent injunction against Roberto.

## G. Selling the House

Subsequently, the trial court approved Karla's application to sell the house, and it ordered that the house be sold. Karla arranged to sell the house; she reported a contract of sale to the court, and it approved the sale.

**H.** **Roberto's Appeal**

Roberto filed a notice of appeal, which Karla challenged as defective, and she moved this court to dismiss the appeal. Roberto filed an amended notice of appeal, which was accepted, and we denied Karla's motion to dismiss this appeal.

Roberto presents six issues. He argues (1) Karla should be removed as dependent administratrix, (2) Mom failed to prove her claim against the estate, (3) he was illegally evicted and deprived of his life estate in the property, (4) the trial court erred in granting the permanent injunction against him, (5) the settlement agreement should be set aside, and (6) as the prevailing party, he is entitled to costs and attorney's fees for this appeal. We begin with his first issue.

### REMOVE KARLA AS DEPENDENT ADMINISTRATRIX

In his first issue, which overlaps with his fifth issue, Roberto argues the trial court erred by denying his motion to remove Karla as the dependent administratrix of Maria Luisa's estate. He insists that because Karla assigned her interest in her sister's estate to Mom, Karla had no interest in the estate, and therefore she could not serve as the dependent administratrix of her sister's estate.

Karla contends that the trial court properly appointed her as a dependent administratrix.

**A.** **Persons Qualified to Represent the Estate**

A trial court may grant letters testamentary or of administration to a qualified person who is the decedent's surviving spouse or next of kin. TEX. EST. CODE ANN. § 304.001 (personal representative); *Guyton v. Monteau*, 332 S.W.3d 687, 690 (Tex. App.—Houston [14th Dist.] 2011, no pet.).

A person is not qualified to serve as an executor or administrator if the trial court finds that person "unsuitable." TEX. EST. CODE ANN. § 304.003 (disqualified persons); *Guyton*, 332 S.W.3d at 690. Determining whether a person is suitable or unsuitable is within the trial court's broad

discretion. *Ayala v. Mackie*, 158 S.W.3d 568, 572 (Tex. App.—San Antonio 2005, pet. denied); *see also Pine v. deBlieux*, 360 S.W.3d 45, 47 (Tex. App.—Houston [1st Dist.] 2011, pet. denied).

Unless the trial court's determination is arbitrary, unreasonable, or without reference to guiding rules and principles, we will not disturb its decision. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985); *Guyton*, 332 S.W.3d at 690.

## B. Discussion

The trial court found that Karla was Maria Luisa's sibling, and it appointed Karla as dependent administratrix of the estate. *See* TEX. EST. CODE ANN. § 304.001; *Guyton*, 332 S.W.3d at 690. Roberto objected to an independent administration of the estate, but he did not object to Karla's appointment as a dependent administratrix.

Karla began serving, and she and Mom negotiated with Roberto regarding the disposition of the estate. Karla's lawyer presented a settlement offer to Roberto.

Roberto accepted the offer, which he and his lawyer signed, and it was filed with the trial court as a Rule 11 agreement. *See* TEX. R. CIV. P. 11; *Shamrock Psychiatric Clinic, P.A. v. Tex. Dep't of Health & Hum. Servs.*, 540 S.W.3d 553, 560 (Tex. 2018) (per curiam).

Later, Roberto sought to remove Karla as the administrator. He did not argue that he should have been appointed; instead, he asked that a suitable independent administrator be appointed. He insisted that Karla was disqualified because she was seeking to enforce the settlement agreement.

At the hearing on Roberto's motion, Karla testified regarding her actions as the administratrix. She referred to the Rule 11 agreement and repeatedly stated that she had a check for the agreed settlement amount ready to give to Roberto as soon as he moved out of the house, but he refused to honor the written agreement and move out.

The trial court noted that Roberto had signed the Rule 11 agreement, which implicitly recognized Karla as the dependent administratrix, and it denied Roberto's request to remove Karla as the dependent administratrix.

Having reviewed the record, we cannot conclude that the trial court's denial of Roberto's motion to remove Karla as the dependent administratrix of the estate was arbitrary, unreasonable, or without reference to guiding rules and principles. *See Downer*, 701 S.W.2d at 241–42; *Ayala*, 158 S.W.3d at 572.

We overrule Roberto's first issue.

### RULE 11 AGREEMENT

Because the validity and enforceability of the Rule 11 agreement affects other issues, we turn now to Roberto's fifth issue.

In his fifth issue, Roberto argues the settlement agreement should be set aside. He argues that Karla "did not have standing to enter into the Settlement Agreement [because she] judicially admitted she was not an interested party regarding probate of the Estate of Maria Luisa." He also argues that the trial court did not allow him a reasonable time to conduct discovery regarding the agreement.

Karla contends that the settlement agreement, which Roberto and his attorney signed, and which was filed with the court as a Rule 11 agreement, met all the requirements for a valid, enforceable agreement, and the trial court did not err by enforcing it.

### A. Rule 11 Agreement Requirements

"To be effective, a Rule 11 agreement must consist of 'a written memorandum which is complete within itself in every material detail, and which contains all of the essential elements of the agreement.'" *Shamrock Psychiatric Clinic*, 540 S.W.3d at 561 (quoting *Padilla v. LaFrance*, 907 S.W.2d 454, 460 (Tex. 1995)); *see also* TEX. R. CIV. P. 11.

"Settlement agreements are contracts and are accordingly governed by contract-law principles." *Angel, Tr. for Gobsmack Gift Tr. v. Tauch*, 642 S.W.3d 481, 488 (Tex. 2022); *accord Shamrock Psychiatric Clinic*, 540 S.W.3d at 560.

If a Rule 11 agreement is valid, "[a] trial court has a ministerial duty to enforce [it]." *Shamrock Psychiatric Clinic*, 540 S.W.3d at 560 (citing *Fortis Benefits v. Cantu*, 234 S.W.3d 642, 651 (Tex. 2007)).

**B.      Standard of Review**

Whether a Rule 11 agreement is ambiguous is a question of law for the court.  *See Wal-Mart Stores, Inc. v. Sturges*, 52 S.W.3d 711, 728 (Tex. 2001); *Marx v. FDP, LP*, 474 S.W.3d 368, 375 (Tex. App.—San Antonio 2015, pet. denied).

Similarly, the construction of an unambiguous agreement is a question of law.  *See URI, Inc. v. Kleberg Cnty.*, 543 S.W.3d 755, 763 (Tex. 2018); *Gen. Metal Fabricating Corp. v. Stergiou*, 438 S.W.3d 737, 744 (Tex. App.—Houston [1st Dist.] 2014, no pet.).

The enforceability of a settlement agreement is also a question of law.  *See McCalla v. Baker's Campground, Inc.*, 416 S.W.3d 416, 418 (Tex. 2013) (per curiam); *Stergiou*, 438 S.W.3d at 744.

We review questions of law de novo.  *Sundown Energy LP v. HJSA No. 3, Ltd. P'ship*, 622 S.W.3d 884, 888 (Tex. 2021); *URI, Inc.*, 543 S.W.3d at 763.

**C.      Karla's Standing to Enter into Agreement**

Roberto argues the Rule 11 agreement should be set aside because Karla had no standing to enter the agreement, but he provides no authorities to support his contention.

As we have previously explained, the trial court has broad discretion to appoint a qualified person as a personal representative of the estate.  TEX. EST. CODE ANN. § 304.001 (personal representative); *Ayala*, 158 S.W.3d at 572; *see also Guyton*, 332 S.W.3d at 690.  Karla was Maria

Luisa's sister, and as Maria Luisa's next of kin, Karla could be appointed as the dependent administratrix. *See* TEX. EST. CODE ANN. § 304.001(a)(5); *Zamora v. Garza*, 129 S.W.2d 401, 402 (Tex. App.—San Antonio 1939, no writ).

As the dependent administratrix, Karla represented the estate, and she could enter into a settlement agreement regarding the estate. *See* TEX. EST. CODE ANN. § 351.051(a) ("If a personal representative considers it in the interest of the estate, the representative may, on written application to the court and if authorized by court order . . . (4) make a compromise or settlement in relation to property or a claim in dispute or litigation . . . ."); *Catlett v. Catlett*, 630 S.W.2d 478, 482 (Tex. App.—Fort Worth 1982, writ ref'd n.r.e.).

**D.    Validity of Settlement Agreement**

The record shows the written settlement agreement, which was filed with the trial court, identifies the parties, the real and personal property at issue, and the disposition of the property and Roberto's claims. *See* TEX. R. CIV. P. 11; *Shamrock Psychiatric Clinic*, 540 S.W.3d at 561. We conclude the settlement agreement was a valid, enforceable agreement. *See* TEX. R. CIV. P. 11; *Shamrock Psychiatric Clinic*, 540 S.W.3d at 561.

**E.    Reasonable Time for Discovery**

On appeal, Roberto argues that he did not have a reasonable time to conduct discovery regarding the settlement agreement, but he does not point to any motion or hearing to show that he preserved that complaint. *Contra* TEX. R. APP. P. 33.1(a); *Zorrilla v. Aypco Constr. II, LLC*, 469 S.W.3d 143, 155 n.10 (Tex. 2015). The record conclusively establishes that he and his lawyer signed the settlement agreement, and the record does not contain any motion (and corresponding ruling) for additional time for discovery before Roberto signed the agreement. *Contra* TEX. R. APP. P. 33.1(a); *Zorrilla*, 469 S.W.3d at 155 n.10. Further, the authorities Roberto cites do not

support his argument that he was not allowed a reasonable time to conduct discovery or that the trial court somehow erred in accepting and enforcing the Rule 11 agreement.

## F.     Roberto's Arguments Fail

Roberto's arguments that the settlement agreement should be set aside because (1) Karla lacked standing and (2) he did not have a reasonable amount of time for discovery are fatally flawed.  The Rule 11 agreement was a valid, enforceable agreement, and the trial court had a ministerial duty to enforce it.  *See Shamrock Psychiatric Clinic*, 540 S.W.3d at 560 (citing *Fortis Benefits*, 234 S.W.3d at 651).

We overrule Roberto's fifth issue.

### INVALID CLAIM, ILLEGAL EVICTION

In his second issue, Roberto argues Mom failed to prove her claim against his wife's estate. He contends Mom's claim was not supported by the required affidavit, *see* TEX. EST. CODE ANN. § 1157.004, and the trial court erred in its order approving the inventory, appraisement, and list of claims.

In his third issue, Roberto argues he was illegally evicted from his homestead and deprived of his life estate in the house.  He contends that Karla had no right to evict him because "she judicially admitted she was not an interested party," and she did not comply with the applicable civil rules.  *See, e.g.*, TEX. R. CIV. P. 510 (evictions).

Both issues are negated by the Rule 11 agreement.  In the agreement, Roberto agreed to "release any claim to the property," which necessarily includes his homestead, life estate, and right to possession claims, and which made his challenge to Mom's claim moot.  Roberto and his lawyer signed the written agreement, and it was filed with the court.  *See* TEX. R. CIV. P. 11; *Shamrock Psychiatric Clinic*, 540 S.W.3d at 560–61.

Because the Rule 11 agreement was a valid, enforceable agreement which the trial court had a ministerial duty to enforce, we overrule Roberto's second and third issues.

## PERMANENT INJUNCTION

In his fourth issue, Roberto argues the trial court erred by permanently enjoining him from entering the property. Karla contends that after Roberto signed the Rule 11 agreement, he had no further interest in the house, and the trial court did not err.

### A.     Permanent Injunction Requirements

"To be entitled to a permanent injunction, a party must prove (1) a wrongful act, (2) imminent harm, (3) an irreparable injury, and (4) the absence of an adequate remedy at law." *Pike v. Tex. EMC Mgmt., LLC*, 610 S.W.3d 763, 792 (Tex. 2020); *accord Orix Cap. Mkts., LLC v. La Villita Motor Inns, J.V.*, 329 S.W.3d 30, 44 (Tex. App.—San Antonio 2010, pet. denied).

"We review the trial court's [ruling on] a permanent injunction for an abuse of discretion." *Pike*, 610 S.W.3d at 792; *accord Orix Cap. Mkts.*, 329 S.W.3d at 44.

### B.     Discussion

When Roberto signed the Rule 11 agreement, he released any claim he may have had to the house, including any right to enter it.

When Karla sought a permanent injunction, she argued that Roberto was wrongfully possessing the house, he was excluding her from the property, he was preventing her from selling it, and she had no adequate remedy at law. *Cf. Pike*, 610 S.W.3d at 792.

Even if we assume the trial court erred in granting the permanent injunction, we nevertheless necessarily conclude that the permanent injunction did not deprive Roberto of any right or interest in the property because he had already released any claim to it. Roberto has not shown that the trial court's allegedly erroneous order granting a permanent injunction caused the

rendition of an improper judgment. *See* TEX. R. APP. P. 44.1(a)(1); *Caffe Ribs, Inc. v. State*, 487 S.W.3d 137, 144–45 (Tex. 2016).

We overrule Roberto's fourth issue.

### COSTS, ATTORNEY'S FEES

In his sixth issue, Roberto argues that because he is the prevailing party, he is entitled to recover his costs, expenses, and attorney's fees. He sought to recover his "attorney's fees, expenses, and costs through trial and appeal" via his motion to set aside the settlement agreement. But the trial court denied Roberto's motion, and it granted Karla's motion to enforce the Rule 11 agreement.

### A. Court Costs, Attorney's Fees

"Texas Rule of Civil Procedure 131 provides that '[t]he successful party to a suit shall recover of his adversary all costs incurred therein, except where otherwise provided.'" *Roberts v. Williamson*, 111 S.W.3d 113, 124 (Tex. 2003) (quoting TEX. R. CIV. P. 131).

However, costs under Rule 131 do not include attorney's fees, and under Texas law, "attorney's fees are not awarded unless a statute or contract authorizes them." *JCB, Inc. v. Horsburgh & Scott Co.*, 597 S.W.3d 481, 491 (Tex. 2019) (citing *In re Nat'l Lloyds Ins. Co.*, 532 S.W.3d 794, 809 (Tex. 2017) (orig. proceeding); *City of Houston v. Maguire Oil Co.*, 342 S.W.3d 726, 747 (Tex. App.—Houston [14th Dist.] 2011, pet. denied) (addressing costs under Rule 131 and noting that "'[c]osts' usually encompass fees and charges required by law to be paid to the courts or some of their officers [such as] filing and service fees").

### B. Roberto Not Entitled to Awards

Under Rule 131, the prevailing party is entitled to recover costs of court. *Roberts*, 111 S.W.3d at 124 (quoting TEX. R. CIV. P. 131). But on his motion to set aside the settlement agreement, Roberto was not the prevailing party, and the trial court did not err in denying Roberto's

request for costs and expenses. *See* TEX. R. CIV. P. 131; *Roberts*, 111 S.W.3d at 124. Further, Roberto cites no statute or contract that allows him to recover his attorney's fees. *See JCB, Inc.*, 597 S.W.3d at 491.

We overrule Roberto's sixth issue.

#### CONCLUSION

Having overruled each of Roberto's issues, we affirm the trial court's orders.

Patricia O. Alvarez, Justice