Maurice CARANAS, Appellant,

v.

MORGAN HOSTS–HARRY HINES BOULEVARD, INC., Appellee.

No. 17507.

Court of Civil Appeals of Texas, Dallas.

Oct. 2, 1970.

Wm. Andress, Jr., Andress & Woodgate, Dallas, for appellant.

John D. Gilliland, Akin, Steinberg & Stanford, Dallas, for appellee.

BATEMAN, Justice.

This case involves the construction of certain portions of a written lease whereby the appellant Maurice Caranas, as lessor, let to the appellee certain commercial property for a term of years. The principal dispute concerns the amount of rent. The lease provides for rent as follows:

"1. Lessee agrees to pay to lessor as rental for the premises as follows:

(A). *Base Rental.* One Thousand Six Hundred and Fifty Dollars (1650.00) per month, commencing on the first day of December, 1967, and a like payment on the first day of each month thereafter until said lease or any of its options to renew, granted herein, shall expire.

(B). *Additional Rental.* At such point in time in each lease year as lessee's 'gross sales', as hereinafter defined, shall exceed $250,000, then lessee shall owe ten per cent (10%) of such excess to lessor as additional rental. Said sum shall be determined by computing lessee's gross sales in excess of $250,000, at the end of each remaining month in the then current lease year, and paying to landlord by the 10th of the month succeeding the month or months in which said additional rental shall accrue, whatever amount ten per cent of the gross sales for that month shall exceed $1650."

Appellee filed this suit for declaratory judgment ascertaining the meaning thereof. Caranas contended that the total rental provided for by the lease was a base rental of $1,650 per month, or $19,800 annually, plus 10 per cent of lessee's gross sales in excess of $250,000 each year, and that this additional rental was payable monthly after the gross sales exceeded $250,000, with final adjustment at the end of each contract year, and offered his testimony, as well as that of his attorney, as to negotiations and other events leading up to the execution of the lease, in order to dispel the ambiguity. The trial court, sitting without a jury, excluded this testimony and held that the language in question was not ambiguous and that the provision for additional rental due in any "lease month" during which the total gross sales for that year exceed $250,000 shall be "the amount by which ten per cent (10%) of the monthly gross sales in excess of $250,000.00 for the lease year exceeds the base rental of $1,650.00."

In his first three points of error on appeal Caranas complains (1) of the holding that the rental provision was not ambiguous, (2) of the refusal of the court to admit the parol testimony, and (3) the error of the court in failing to hold that the intent of the parties was that the annual rent should be $1,650 times 12, or $19,800, plus 10 per cent of the excess of annual gross sales over $250,000, and that the provision for monthly payment was simply a formula for interim payments pending final deter-

mination of the aggregate rental for the year.

Our paramount duty is to ascertain the intention of the parties. This must be done, if possible, by considering the lease as a whole and by harmonizing, if possible, those provisions which appear to be in conflict. Certain established rules of interpretation are available and if after applying those rules the conflict or ambiguity remains, and the contract is still susceptible of two reasonable meanings, then, and only then, may extrinsic evidence be received to resolve the ambiguity. McMahon v. Christmann, 157 Tex. 403, 303 S.W.2d 341, 344, 304 S.W.2d 267 (1957), and cases cited therein.

It has also been said that evidence of attending circumstances is unavailable to aid in ascertaining the intention of the parties "when the writing plainly and clearly discloses such intention, or is phrased in language not fairly susceptible of more than one interpretation." Fox v. Lewis, 344 S.W.2d 731, 736 (Tex.Civ.App., Austin 1961, writ ref'd n. r. e.). To the same effect, see Lewis v. East Texas Finance Co., 136 Tex. 149, 146 S.W.2d 977, 980 (1941).

■ We agree with appellant that the two sentences of subparagraph (B), quoted above, are so in conflict as to create an ambiguity, in that the first states simply and clearly that the additional rental shall be 10 per cent of the excess of $250,000 in gross sales each year, while the second would indicate that such additional rental should be only such portion of 10 per cent of the gross sales in excess of $250,000 as shall exceed the base monthly rental of $1,650.

We think the court erred in holding that the provisions in the lease for payment of rental are not ambiguous. We have been unable to reconcile these two provisions, and the conclusion is inescapable that they are in such conflict that the meaning is obscured. The intention of the parties cannot be determined by examining and giving effect to all of the language used by them. Accordingly, appellant's first point of error on appeal is sustained.

Ambiguity having been established, it follows that the language of the contract may be read in the light of the attending circumstances and that parol evidence may be heard to explain the ambiguity or apparent repugnancy when such evidence is consistent with the writing, although the terms of the agreement may not be varied by such evidence. Remington Rand, Inc. v. Sugarland Industries, 137 Tex. 409, 153 S.W.2d 477, 483 (1941).

Moreover, we must always bear in mind that the object of the search for the intention of the parties is not the intention which they may have had in their minds but failed to express in the contract, but the intention which they did express therein; "not what the parties meant to say but the meaning of what they did say." Young v. De La Garza, 368 S.W.2d 667, 670 (Tex. Civ.App., Dallas 1963, no writ); 13 Tex. Jur.2d, Contracts, § 123, pp. 291–292.

■ Our careful examination of the evidence proffered by Caranas in this respect discloses that in the negotiations leading up to the execution of the lease it was understood and agreed that the additional rent should be 10 per cent of the excess of $250,000 in gross sales, and that this would be in addition to the base rental of $1,650 per month. But that is repugnant to what is said in the second sentence of subparagraph (B) and would therefore be inadmissible under the parol evidence rule. (We do not wish to be understood as holding that no parol evidence would have been admissible; only that the testimony shown by the bill of exceptions to have been excluded was inadmissible.)

Moreover, as will appear from our discussion of appellant's third point of error, immediately following, any error there may have been in excluding the testimony was harmless. Rule 434, Vernon's Texas Rules of Civil Procedure. The second point of error is overruled.

In his third point of error Caranas states that the court erred in failing to hold that the primary and controlling intent of the parties was to pay the basic rental of $1,650 per month and an additional rental of 10 per cent of the excess of gross sales of $250,000, and that the provision for monthly payment was simply a formula for interim payments pending final determination of the aggregate annual rental. We agree.

If the provisions in question are in such conflict that the meaning of the section regarding rentals is obscured or rendered doubtful—if they are so repugnant as to create a genuine ambiguity, as we hold they are, then we apply the rule that the provision first appearing in the agreement must be given controlling effect over the later conflicting provision. Young v. De La Garza, 368 S.W.2d 667, 670 (Tex.Civ.App., Dallas 1963, no writ); Southland Royalty Co. v. Pan American Petro. Corp., 378 S.W. 2d 50, 57 (Tex.1964); 17 Am.Jur.2d, Contracts, § 267, pp. 673–676. The rule is thus stated in 13 Tex.Jur.2d, Contracts, § 142, p. 323:

> "If a variance exists between two clauses in the instrument, one rule of construction applied by the courts is that which declares that the clause which contributes most essentially to the agreement is the one that is entitled to the greater consideration. Another important rule of construction observed by the courts is that which declares that if there is an irreconcilable conflict between two clauses, by which the meaning of the contract is rendered obscure or doubtful, the provisions of the first clause will be deemed to be controlling."

As said in Price v. Biggs, 217 S.W. 236, 238 (Tex.Civ.App., Amarillo 1919, no writ), "The first clause can be held to control and the latter be rejected, if necessary." To the same effect, see Osburn v. Smart, 58 S.W.2d 1073, 1078 (Tex.Civ.App., Fort Worth 1932, writ dism'd) and Storm v. United States, 243 F.2d 708, 711 (5 Cir. 1957).

The first of the two inconsistent sentences, in addition to being the first to appear, clearly "contributes most essentially to the agreement." It expresses unequivocally the precise agreement for the additional rent and exactly how it shall be computed; it leaves open only the matter of the time of payment. The second sentence merely attempts to set forth when and how the additional rent *already agreed upon* shall be paid, and it is inconceivable to us that the parties intended thereby to emasculate or destroy the positive agreement so clearly expressed in the first. Therefore, we hold the first sentence of subparagraph (B) to be controlling and reject that portion of the second sentence which would appear to be inconsistent therewith. By this means we think the intention of the parties is properly determined by the instrument itself without resort to any extrinsic evidence. Appellant's third point of error is sustained.

In this fourth point of error the appellant complains of the refusal of the court to terminate and cancel the lease for breach thereof by lessee in two respects, as prayed in his counterclaim. The first related to the matter of the kind of cash register used by the lessee. Paragraph 2 of the lease was as follows:

> "2. For the purpose of ascertaining the amount of rental payable pursuant to the terms of this Lease, Lessee shall record the amount of all sales in its cash registers, and such record shall be made at the time of sale. Lessor, or its agent, shall have the right to inspect such cash registers at least once each day or at any reasonable time. The totalizing counter of such cash registers shall run continuously and shall not be reset at any time except by Lessor or its agent. All reset keys to said totalizers shall be kept in the possession of the Lessor at all times."

Included in the equipment which the lessee rented from Caranas with the building was a cash register which kept a record of sales until they reached $10,000, at

which point it would "automatically jump back to zero." The trial court found that the above quoted Paragraph 2 of the lease provided that "the cash registers used on the premises be equipped with totalizing counters which shall run continuously," and concluded that the lessee was required thereby to provide at its expense a cash register with totalizing counters that would run continuously, or to modify the cash register currently on the premises so as to comply with this requirement. The trial court nevertheless denied Caranas' counter-claim for cancellation of the lease on ac-count of this breach. In this we think the court erred. The court's findings and con-clusion are not attacked by either party; the findings are supported by evidence, and we agree with the conclusion of law.

The requirement of a particular kind of cash register to be furnished and used by the lessee was neither unreasonable nor illegal. It was provided in Paragraph 19 of the lease that upon failure of lessee to comply with any of its obligations thereun-der, and its failure to correct any such de-fault within thirty days after written no-tice thereof from lessor, the lessor should have the right to terminate the lease with-out further notice. It was shown without dispute that the lessee persisted in its re-fusal to install a cash register that would comply with the lease after repeated writ-ten demands therefor by Caranas' attorney over a period of more than thirty days.

It was also provided, in Paragraph 11 of the lease, that the lessee should main-tain the coffee shop and restaurant (for which the premises were leased) open for business from 7:00 a. m. to 10:00 p. m. This provision was admittedly not com-plied with during the three months preced-ing the trial. Caranas' attorney also made written demand for correction of this de-fault, but lessee persisted nevertheless on the ground of the unavailability of ade-quate help.

The parties had every right to make this contract and to agree upon the foregoing provisions regarding termination by Ca-ranas. Maddox Motor Co. v. Ford Motor Co., 23 S.W.2d 333, 338 (Tex.Com.App. 1930, holdings approved); Wood Motor Co. v. Nebel, 150 Tex. 86, 238 S.W.2d 181, 186 (1951). Caranas fully complied with the provisions as to notice and we cannot say that these breaches were immaterial or not of sufficient consequence to war-rant termination of the lease. The parties having agreed upon the right of termina-tion, we think it was the trial court's duty to enforce that agreement and declare the lease terminated. Caranas' fourth point of error is sustained.

By his fifth point of error on appeal Caranas complains of the trial court's re-fusing to find the value of certain fixtures which were in the premises when lessee took possession, and which the lessee re-moved with consent of Caranas, but which were allowed by lessee to be exposed to the weather and the value thereof destroyed. In its findings of fact and conclusions of law the trial court found that during the course of the remodeling of the premises for lessee's occupancy certain fixtures and other items of personal property were re-moved with the knowledge and consent of both parties and stored in the open behind the rented premises, neither party being willing to accept the responsibility for pro-viding weatherproof storage therefor, and that there was no breach of the lease in this respect. The trial court also concluded that Caranas had failed to prove the amount of his damages. Caranas' counter-claim for such damages was accordingly denied.

■ Caranas testified that the value of the property thus destroyed exceeded $10,-000. He admitted that the property, hav-ing been custom-made for a particular pur-pose and location, had no market value, but insists that he was entitled to recover the intrinsic value thereof, which he said was $10,000. Since this was testimony of an interested party, wholly uncorroborated, it did no more than raise a fact issue. The trial court had a right to disbelieve it and we see no grounds for holding that its do-

**230**

ing so was an abuse of discretion. No reversible error having been shown thereby, the fifth point of error is overruled.

For the errors committed by the trial court, the judgment is reversed and here rendered declaring the meaning of Paragraph 1(A) and (B) of the lease to be that lessee agreed to pay a base rental of $1,650 per month, or $19,800 annually, plus additional rental of 10 per cent of the lessee's gross sales in excess of $250,000 each year during the life of the lease, which additional rental is in addition to, and undiminished by, the base monthly rental of $1,650; that the appellant had the legal right under the lease to terminate the same for lessee's breaches with respect to the cash register and the hours of operation each day. That part of the judgment denying appellant's claim for damages for deterioration of his fixtures and other personal property is affirmed.

Reversed and rendered in part, and affirmed in part.