

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-22-00426-CV

Brandon Joseph **SMART**,
Appellant

v.

**3039 RNC HOLDINGS, LLC**,
Appellee

From the 218th Judicial District Court, Karnes County, Texas
Trial Court No. 19-04-00100-CVK
Honorable Lynn Ellison, Judge Presiding

Opinion by:　Beth Watkins, Justice

Sitting:　　Luz Elena D. Chapa, Justice
　　　　　　Beth Watkins, Justice
　　　　　　Liza A. Rodriguez, Justice

Delivered and Filed: May 10, 2023

AFFIRMED

Appellant Brandon Joseph Smart challenges a final judgment granting appellee 3039 RNC Holdings, LLC's motion for summary judgment and denying Smart's competing motion for summary judgment. We affirm the trial court's judgment.

## BACKGROUND

In 2013, RNC acquired the surface and fifty percent of the mineral estate in a 45.6-acre parcel of land in Karnes County. RNC's principals and sole owners are a married couple, Raymond and Nancy Christian. When RNC sought to sell the surface of the land in 2015, Smart approached

the Christians to express interest in both the surface and a portion of the mineral estate. In March of 2015, RNC agreed to convey and Smart agreed to purchase the surface and part of the mineral estate.

Because Nancy is a Realtor and real estate broker, she had access to forms promulgated by the Texas Real Estate Commission. The parties thus used the then-in-effect TREC-promulgated "Farm and Ranch Contract" and "Addendum for Reservation of Oil, Gas, and Other Minerals" to memorialize their agreement. Paragraph 2F of the Farm and Ranch Contract provides, "Any reservation for oil, gas, or other minerals, water, timber, or other interests is made in accordance with an attached addendum or Special Provisions." RNC and Smart chose to address the percentage of minerals reserved by RNC and/or conveyed to Smart in both a "Special Provisions" paragraph, which appears in Paragraph 11 of the Farm and Ranch Contract, and in the mineral reservation addendum. The parties agree that the Farm and Ranch Contract and the mineral reservation addendum (collectively, the contract) must be read together as one agreement.

Paragraph 11 reads as follows:

> 11. **SPECIAL PROVISIONS:** (Insert only factual statements and business details applicable to the sale. TREC rules prohibit licensees from adding factual statements or business details for which a contract addendum or other form has been promulgated by TREC for mandatory use.)
> seller to convey 10% mineral interest(of what the seller owns–50%) to buyer, see mineral reservation.
> Seller is a licensed Real Estate Broker and co-owner of this property.

The mineral reservation addendum reads:

> B. *Subject to Section C below,* the Mineral Estate owned by Seller, if any, will be conveyed unless reserved as follows (check one box only):
> ☐ (1) Seller reserves all of the Mineral Estate owned by Seller.
> ☒ (2) Seller reserves an undivided ___40%___ interest in the Mineral Estate owned by Seller. *NOTE: If Seller does not own all of the Mineral Estate, Seller reserves only this percentage or fraction of Seller's interest.*

Smart contends, and RNC does not dispute, that Nancy filled in the blanks on the preprinted TREC forms, including the typewritten information in Paragraph 11. Nancy and Raymond reviewed and

signed the contract on RNC's behalf, and Smart reviewed and signed on his own behalf. Although Nancy signed the contract as "Seller," the contract also identifies her as "Listing or Principal Broker." Neither RNC nor Smart were represented by an attorney during the transaction.

After the parties executed the contract, Nancy submitted it to a title company, which prepared a Warranty Deed with Vendor's Lien. The deed provided that RNC reserved "an undivided two-fifths of all oil, gas, and other minerals in and under and that may be produced from the Property," and it conveyed the remainder of RNC's interest in the property to Smart. Because the deed did not mention or account for the fifty percent of the mineral estate that was not RNC's to convey, the parties agree that it appeared on its face to convey three-fifths of the entire mineral estate to Smart. The parties also agree this was a reformable scrivener's error in the deed.

RNC learned of the scrivener's error in 2019, and the Christians contacted Smart to try to correct it. Smart refused to agree to the correction RNC sought, so RNC sued to reform the deed.

The parties filed competing motions for summary judgment. Both motions agreed: (1) the scrivener's error prevented the deed from representing the parties' true intent; (2) due to that scrivener's error, the deed can properly be reformed under these circumstances; and (3) the contract unambiguously showed the parties' true agreement and should be given effect. The parties disagreed, however, about the contract's division of RNC's fifty percent interest in the mineral estate. Smart argued the mineral reservation addendum unambiguously conveyed thirty percent of the total mineral estate to him and reserved twenty percent of the mineral estate for RNC. He also argued the mineral reservation addendum "is the only portion of the contract properly looked to in order to determine the terms of any mineral reservation," and he urged the trial court to conclude Paragraph 11 "is of no consequence." In contrast, RNC argued that when read as a whole and properly harmonized, the contract unambiguously provided that RNC would reserve forty percent of the total mineral estate for itself and convey ten percent to Smart.

On June 16, 2022, the trial court signed an order granting RNC's motion for summary judgment and denying Smart's competing motion. The judgment ordered the deed reformed as follows:

**Reservations from Conveyance:**

For Grantor and Grantor's heirs, successors and assigns forever, a reservation of an undivided forty percent of one hundred percent (40%) of the oil, gas and other minerals in an under and that may be produced from the Property. Grantor herein conveys to Grantee an undivided ten percent of one hundred percent (10%) of the oil, gas and other minerals in and under and that may be produced from the Property.

The trial court also signed an order denying Smart's objections to RNC's summary judgment evidence. Smart then filed this appeal.

ANALYSIS

***Standard of Review***

We review a trial court's summary judgment order de novo. *Rosetta Res. Operating, LP v. Martin*, 645 S.W.3d 212, 218 (Tex. 2022). A party that moves for traditional summary judgment must establish it is entitled to judgment as a matter of law because no genuine issue of material fact exists. TEX. R. CIV. P. 166a(c). Where, as here, the parties file competing motions for summary judgment and the trial court grants one motion and denies the other, we review all the summary judgment evidence and render the judgment the trial court should have rendered. *Rosetta*, 645 S.W.3d at 218.

Because courts construe unambiguous contracts as a matter of law, a trial court may render summary judgment on an unambiguous contract. *See, e.g.*, *Cmty. Health Sys. Pro. Servs. Corp. v. Hansen*, 525 S.W.3d 671, 681 (Tex. 2017); *SAS Inst., Inc. v. Breitenfeld*, 167 S.W.3d 840, 841 (Tex. 2005) (per curiam). But if a contract is ambiguous, summary judgment is inappropriate because the meaning of an ambiguous contract presents a question of fact. *Rosetta*, 645 S.W.3d at

219; *Hansen*, 525 S.W.3d at 681. "Even if parties agree that a contract is unambiguous and argue that the unambiguous language merely creates different results, we may independently conclude that the contract is ambiguous as a matter of law." *Rosetta*, 645 S.W.3d at 219; *see also Sage St. Assocs. v. Northdale Constr. Co.*, 863 S.W.2d 438, 445 (Tex. 1993).

### *Applicable Law*

In interpreting a contract, our primary concern is to give effect to the parties' true intentions as reflected in the language used in the four corners of the instrument. *URI, Inc. v. Kleberg County*, 543 S.W.3d 755, 757 (Tex. 2018). The objective intent expressed by the words the parties used in the agreement controls over the parties' subjective intent. *Id.* We "presume parties intend what the words of their contract say and interpret contract language according to its plain, ordinary, and generally accepted meaning unless the instrument directs otherwise." *Id.* at 764 (internal quotation marks omitted). We must "read contractual provisions so none of the terms of the agreement are rendered meaningless or superfluous," and we may not rewrite the contract or add to its language. *In re Davenport*, 522 S.W.3d 452, 457 (Tex. 2017) (orig. proceeding). "The language in an agreement is to be given its plain grammatical meaning unless to do so would defeat the parties' intent." *DeWitt Cnty. Co-op., Inc. v. Parks*, 1 S.W.3d 96, 101 (Tex. 1999).

A contract is not ambiguous merely because it lacks clarity or the parties disagree as to its meaning. *See, e.g.*, *Nassar v. Liberty Mut. Fire Ins. Co.*, 508 S.W.3d 254, 258 (Tex. 2017) (per curiam). When provisions of a contract appear to conflict, we must attempt to harmonize those terms and assume the parties intended for all the provisions in the contract to have some effect. *See, e.g.*, *Nexstar Broad., Inc. v. Fidelity Commc'ns Co.*, 376 S.W.3d 377, 381–82 (Tex. App.— Dallas 2012, no pet.). If, after applying the relevant rules of contract construction to the document as a whole, we conclude the contract is susceptible to more than one reasonable meaning, the contract is ambiguous. *See Frost Nat'l Bank v. L & F Distrib.*, 165 S.W.3d 310, 312 (Tex. 2005)

(per curiam). In contrast, if the contract can be given a definite or certain legal meaning, it is not ambiguous. *URI*, 543 S.W.3d at 765.

Under the parol evidence rule, we may not rely on extrinsic evidence to create an ambiguity, "to augment, alter, or contradict the terms of an unambiguous contract," to show what the parties "probably meant" but did not state in the express language used in the agreement, "or to make the language say what it unambiguously does not say." *Piranha Partners v. Neuhoff*, 596 S.W.3d 740, 749 (Tex. 2020) (internal quotation marks omitted). However, because "language is nuanced, and meaning is often context driven," we construe a contract's language in the context in which it is used. *URI*, 543 S.W.3d at 757–58. "[E]vidence of surrounding circumstances may aid the understanding of an unambiguous contract's language, inform the meaning of the language actually used, and provide context that elucidates the meaning of the words employed." *Piranha Partners*, 596 S.W.3d at 749 (internal quotation marks omitted). "[O]bjectively determinable facts . . . may help clarify the parties' intent as expressed in the text of their written agreement." *Id.* (internal quotation marks omitted).

### *Application*

While the parties disagree about what the contract means, both sides contend the contract is unambiguous. We must begin by determining if we agree. *See Rosetta*, 645 S.W.3d at 219.

1.    When read in isolation, Paragraph 11 and the mineral reservation addendum appear to conflict with each other.

"A grantor may withhold for itself a part of its estate *either* by granting the entire estate but reserving the portion it desires to retain *or* by granting only the portion it desires to convey." *Piranha Partners*, 596 S.W.3d at 748. Paragraph 11 frames the transaction in terms of the percentage conveyed to Smart, while the mineral reservation addendum describes the amount reserved by RNC.

As noted above, Paragraph 11 provides, "seller to convey 10% mineral interest (of what the seller owns-50%) to buyer[.]" This language could be interpreted as showing that RNC intended to convey ten percent of its fifty percent interest—i.e., five percent of the total mineral estate—to Smart. RNC suggests this language could also be read to mean that RNC intended to convey a "10% mineral interest," with the parenthetical included only to explain that the conveyance was to be carved out of RNC's then-existing interest. *See Nexstar*, 376 S.W.3d at 383 ("Parentheses are normally used to provide some sort of explanation or qualification of other matter in the text.") (internal quotation marks omitted).

The mineral reservation addendum provides that "the Mineral Estate owned by Seller, if any, will be conveyed unless reserved as follows (check one box only)," and the box that is checked provides: "40% interest in the Mineral Estate owned by Seller . . . If Seller does not own all of the Mineral Estate, Seller reserves only this percentage or fraction of Seller's interest." Forty percent of the "percentage or fraction" that RNC owned at that time was twenty percent of the total mineral estate. The mineral reservation addendum, when read in isolation, therefore appears to call for RNC to reserve twenty percent of the total mineral estate for itself and to convey the remaining "percentage or fraction of [RNC's] interest"—i.e., thirty percent of the total mineral estate—to Smart.

When considered in isolation, Paragraph 11 and the mineral reservation addendum appear to render the contract "at least ambiguous, if not completely unenforceable, because" they seemingly conflict on "a term that is obviously essential and material to the parties' agreement."[1] *Piranha Partners*, 596 S.W.3d at 752. However, we may not give controlling effect to either of

---

[1] This court has held that "a court should be reluctant to hold a contract unenforceable for uncertainty." *Marx v. FDP, L.P.*, 474 S.W.3d 368, 376 (Tex. App.—San Antonio 2015, pet. denied) (internal quotation marks omitted). We have also held that a party waives a question of indefiniteness by failing to raise that issue in the trial court. *Id.* at 377. Here, neither party has argued that the contract is uncertain, indefinite, or otherwise unenforceable as to any material terms.

these paragraphs in isolation. *See, e.g.*, *Plains Expl. & Prod. Co. v. Torch Energy Advisors Inc.*, 473 S.W.3d 296, 305 (Tex. 2015). Instead, to determine whether the contract is ambiguous, we must read them together and consider them in the context of the whole instrument to determine whether the contract is subject to more than one reasonable interpretation. *Nassar*, 508 S.W.3d at 257–58.

    2.    <u>Are there multiple reasonable interpretations of the contract?</u>

    *a.*    *Thirty percent to Smart and twenty percent to RNC*

As noted above, Smart argues the contract conveyed thirty percent of the mineral estate to him and reserved twenty percent for RNC. To arrive at this result, Smart expressly asks us to look only to the mineral reservation addendum and ignore Paragraph 11.

Smart contends we may properly disregard Paragraph 11 because Nancy is a real estate agent and TREC does not permit real estate agents to use a "special provisions" paragraph to describe a mineral conveyance. This argument is contrary to the plain language of Paragraph 2F of the contract, which provides that a "reservation for oil, gas, or other minerals . . . is made in accordance with an attached addendum or Special Provisions." Because Smart's argument on this point would render Paragraph 2F meaningless, we must reject it. *See, e.g.*, *Coker v. Coker*, 650 S.W.2d 391, 394 (Tex. 1983). Furthermore, Nancy drafted and signed the contract in her capacity as RNC's principal. *See, e.g.*, *Steer Wealth Mgmt., LLC v. Denson*, 537 S.W.3d 558, 569 (Tex. App.—Houston [1st Dist.] 2017, no pet.) ("Corporations and other business entities can act only through human agents[.]") (internal quotation marks omitted). Smart's cited authority does not establish that TREC's rules prohibit parties who are to be bound by a contract from structuring their agreements as they see fit. *See, e.g.*, *Shields Ltd. P'ship v. Bradberry*, 526 S.W.3d 471, 482 (Tex. 2017) ("Freedom of contract is a policy of individual self-determination[.]").

Smart also cites no authority holding that improper use of a TREC form allows a court to excise provisions from an agreement memorialized with that form. While Smart contends that "[i]t is contrary to public policy to allow [RNC] to recover against Smart based on the language [Nancy] improperly inserted in [Paragraph 11]," the authority he cites for this proposition is inapposite. *See Andrew Shebay & Co., P.L.L.C. v. Bishop*, 429 S.W.3d 644, 646–50 (Tex. App.—Houston [1st Dist.] 2013, pet. denied) (holding attorney who had been convicted of knowingly filing false tax return could not subsequently sue his accountant for "malpractice that arises out of the preparation and filing of the return"). Although the *Shebay* court noted that "Texas public policy prohibits a plaintiff from recovering [tort] damages from his own illegal acts," it did not hold or imply that this public policy prohibits a plaintiff from seeking to enforce all the provisions of an arms-length contract. *See id.* at 648–49. Nor did *Shebay* or any of Smart's other cited authority hold that improper use of an administrative form is an illegality that renders a contractual provision void or otherwise unenforceable.

Smart also argues that "[b]asic canons of contract construction demand that [Paragraph 11] be subordinated to the Mineral Reservation addendum, and stricken" because the addendum "contribute[s] most essentially to the agreement." Smart contends the mineral reservation addendum "is a TREC approved form . . . promulgated by the real estate commission to be used for mineral reservations," while Paragraph 11 is "something [Nancy] filled in a casual way, in her own words, and against the express language in that paragraph prohibiting real estate brokers from using it[.]" Smart does not contend, however, that the mineral reservation addendum contains any essential terms that Paragraph 11 lacks, nor does he contend that the physical format of the papers the parties signed was an essential part of their agreement. Moreover, the authority he cites

for this proposition is factually distinguishable.[2] Finally, and most importantly, Smart's contention that we may elevate one contractual provision over another without attempting to harmonize the two provisions is directly contrary to modern principles of contract construction. *See, e.g., Sundown Energy LP v. HJSA No. 3, Ltd. P'ship*, 622 S.W.3d 884, 888 (Tex. 2021) (per curiam); *Nassar*, 508 S.W.3d at 258; *Plains Expl.*, 473 S.W.3d at 305.

Smart next contends the contract shows the parties intended for the mineral reservation addendum to control over Paragraph 11 because Paragraph 11 instructs the reader to "see mineral reservation." We disagree. We construe this language as showing that the parties intended for both Paragraph 11 and the mineral reservation addendum to have some effect. *See Coker*, 650 S.W.2d at 394. Smart cites no authority for his assertion that this language "acknowledges the precedence" of the mineral reservation addendum. He also does not explain why the parties would have included Paragraph 11 if they intended for it to be negated by the mineral reservation addendum. *See In re Davenport*, 522 S.W.3d at 457.

Finally, Smart contends that any doubt about the proper construction of the contract must be resolved against RNC because Nancy drafted the agreement. The Texas Supreme Court recently noted, however, that courts should not rely on this rule "when determining whether the agreement is ambiguous or when construing an unambiguous agreement." *Piranha Partners*, 596 S.W.3d at

---

[2] The authority on which Smart relies gave controlling effect to the first of two "inconsistent sentences" in a written agreement. *See Caranas v. Morgan Hosts-Harry Hines Boulevard*, 460 S.W.2d 225, 228 (Tex. App.—Dallas 1970, no writ). The *Caranas* court concluded the first sentence "expresse[d] unequivocally" the parties' "precise agreement," while the second merely "set forth when and how" the agreed terms would be implemented. *Id*. Here, in contrast, the mineral reservation addendum and Paragraph 11 both address the same essential term. Furthermore, the *Caranas* court concluded that the sentence to which it gave controlling effect was entitled to more weight because it appeared earlier in the agreement. *Id*. Under that analysis, the mineral reservation addendum would be entitled to *less* weight than Paragraph 11. We note, however, that the Texas Supreme Court has largely turned away from similar "arbitrary" and "mechanical" rules of construction. *See, e.g., Piranha Partners*, 596 S.W.3d at 746–47; *Hysaw v. Dawkins*, 483 S.W.3d 1, 8 (Tex. 2016); *Luckel v. White*, 819 S.W.2d 459, 462 (Tex. 1991).

749. We may not construe a contract against its drafter unless we have already concluded that any "'doubt' about the document's meaning renders the language ambiguous." *Id.*

Smart's construction is a reasonable interpretation of the mineral reservation addendum in isolation. However, because that construction requires us to give controlling effect to a single provision of the contract and ignore others, it is not a reasonable reading of the contract as a whole. *See, e.g.*, *Coker*, 650 S.W.2d at 393. For the same reason, Smart cannot show his interpretation of the contract entitles him to judgment as a matter of law. *See id.* Accordingly, the trial court did not err by denying Smart's motion for summary judgment. *See* TEX. R. CIV. P. 166a(c).

b.      *Five percent to Smart and forty-five percent to RNC*

As noted above, Paragraph 11 is subject to two potential meanings. The first potential meaning—that RNC intended to convey ten percent *of* its fifty percent interest, or five percent of the total mineral estate, to Smart—is a reasonable interpretation of Paragraph 11 in isolation. However, that construction would require us to ignore the mineral reservation addendum. Accordingly, the contract as a whole cannot reasonably be construed as conveying five percent of the mineral estate to Smart. *See, e.g.*, *In re Davenport*, 522 S.W.3d at 457; *Coker*, 650 S.W.2d at 393.

c.      *Ten percent to Smart and forty percent to RNC*

In both its motion for summary judgment and its appellate briefing, RNC argues that Paragraph 11 and the mineral reservation addendum can be harmonized to give effect to both. RNC contends that when harmonized, these provisions show the parties intended that forty percent of the total mineral estate would be reserved for RNC and ten percent would be conveyed to Smart.

We agree that this is a reasonable construction of the contract as a whole. Unlike the other potential constructions of the contract, RNC's forty-ten split can plausibly be extracted from both Paragraph 11 and the mineral reservation addendum. *See James Clark, Inc. v. Vitro Am., Inc.*, 269

S.W.3d 681, 684 (Tex. App.—Beaumont 2008, no pet.) (concluding contract in which "there was certainly a mistake made in reducing the parties' agreement to writing" was nevertheless subject to "only one" reasonable interpretation). Additionally, only RNC's construction explains the parties' decision to include both a conveyance (ten percent in Paragraph 11) and a reservation (forty percent in the addendum) in the contract. *See Perthuis v. Baylor Miraca Genetics Lab'y, LLC*, 645 S.W.3d 228, 236 (Tex. 2022) (noting general principles of contract construction "disfavor[] surplusage"); *XCO Prod. Co. v. Jamison*, 194 S.W.3d 622, 630 (Tex. App.—Houston [14th Dist.] 2006, pet. denied) (construing contract in manner that accounted for use of different terms in similar provisions).

We recognize that both Paragraph 11 and the mineral reservation addendum contain language that appears to identify the listed percentages as fractions of RNC's pre-conveyance interest rather than as fractions of the entire mineral estate. But in construing a contract, we should do so "in such a manner as to render performance possible rather than impossible." *Marx*, 474 S.W.3d at 375–76 (internal quotation marks omitted); *see also Henry v. Gonzalez*, 18 S.W.3d 684, 688 (Tex. App.—San Antonio 2000, pet. dism'd by agr.) (construing irreconcilably conflicting provision "as drafting error"). For obvious reasons, a contract that called for Smart to receive, and for RNC to reserve, two different and incompatible percentages of the mineral estate would be impossible to perform and would therefore "defeat the parties' intent" to execute an enforceable conveyance of real property. *See DeWitt Cnty. Co-op*, 1 S.W.3d at 101; *Marx*, 474 S.W.3d at 375–76; *see also Plains Expl.*, 473 S.W.3d at 305 (noting Texas courts "avoid[] unreasonable constructions when possible and proper").

Additionally, in striving to give effect to the entire contract, we may consider "evidence of surrounding circumstances" to "help clarify the parties' intent as expressed in the text of their written agreement." *Piranha Partners*, 596 S.W.3d at 749. Here, one of the "objectively

determinable facts and circumstances that contextualize the parties' transaction" is that RNC did not own—and therefore could not convey—more than fifty percent of the mineral estate. *See URI*, 543 S.W.3d at 757–58. While the contract "is not a model of clarity," we conclude its language can reasonably be construed as the parties' inartful attempt "to avoid . . . an over-conveyance problem" rather than as creating an irreconcilable conflict between Paragraph 11 and the mineral reservation addendum. *See Wenske v. Ealy*, 521 S.W.3d 791, 797–98 (Tex. 2017); *see also In re D. Wilson Constr. Co.*, 196 S.W.3d 774, 781 (Tex. 2006) ("Inartful drafting does not alone render a contractual provision ambiguous.").

After reviewing the four corners of the contract in light of the surrounding circumstances, we conclude RNC's construction effectively harmonizes Paragraph 11 and the mineral reservation addendum and allows the contract to be given a definite and certain legal meaning. *See Nexstar*, 376 S.W.3d at 388. Because we have rejected the other possible interpretations of the contract, we conclude that RNC's interpretation is the only reasonable construction. *See id.*

> 3.    <u>Because there is only one reasonable interpretation of the contract, it is not ambiguous and summary judgment was proper.</u>

Having concluded that RNC's construction is the only reasonable interpretation of the contract, we hold the contract unambiguously provides for RNC to reserve forty percent of the mineral estate for itself and convey ten percent of the mineral estate to Smart. *See id.* Because the contract unambiguously supports RNC's interpretation, the trial court did not err by concluding RNC was entitled to judgment as a matter of law or by reforming the deed accordingly. TEX. R. CIV. P. 166a(c); *Nexstar*, 376 S.W.3d at 388.

For these reasons, we overrule Smart's challenge to the trial court's summary judgment. Because we have concluded RNC was entitled to summary judgment based on the four corners of

the contract, we need not consider Smart's arguments that the trial court relied on inadmissible parol evidence. TEX. R. APP. P. 47.1.

## CONCLUSION

We affirm the trial court's summary judgment.


Beth Watkins, Justice